W. E. GRAY et al., Appellants,

v.

Jimmy BIRD et al., Appellees.

No. 38.

Court of Civil Appeals of Texas.

Tyler.

June 18, 1964.

Rehearing Denied July 16, 1964.

A. J. Thompson, Thompson & Stripling, Nacogdoches, Luther C. Johnston, Palestine, for appellants.

Swaim & Swaim, Eden, B. R. Reeves, John B. McDonald, Palestine, Thomas Black, Black & Stayton, Austin, for appellees.

MOORE, Justice.

This is a plenary or independent suit originally brought in the County Court of Anderson County to set aside a judgment of that court theretofore entered probating the will of Cora E. Strong. Under the terms of the will, Cora E. Strong, bequeathed all of her property to her six living brothers and sisters, to-wit: Flora Gray Day, Emma Gray Rhodes, W. E. Gray, Pearl Elliott, Iva May Bishop and B. F. Gray, share and share alike, and further provided that should either of her brothers or sisters predecease her that their share would not lapse but would pass to their descendants. Testatrix had two other sisters, who died many years before the execution of the will. The surviving children of these two sisters are the plaintiffs in this suit. Plaintiffs, Jimmy Bird and Mary K. Beach, are the surviving children of testatrix's sister, Henrietta Gray Bird, who died in 1939, and plaintiff, Emsy Lorinne Long, is the surviving child of testatrix's sister, Lorinne Gray Swain, who died in 1921. Defendants are the six living brothers and sisters of testatrix, named above. Plaintiffs allege lack of testamentary capacity and undue influence as grounds for contesting the validity of the will. After a hearing, the County Court entered judgment upholding the validity of the will. Thereupon, plaintiffs duly perfected their appeal to the District Court of Anderson County, Texas, and, after a hearing the court sitting without a jury entered judgment setting aside the probate of the will because of the lack of testamentary capacity. The defendants duly excepted to the judgment of the court and have perfected this appeal.

The records show that the will was executed on the 19th day of February, 1953, and that Cora E. Strong died on the 21st day of March, 1959, approximately six years after the execution of the will, at the age of 76 years.

The record in this case is voluminous. The statement of facts, consisting of 672

pages, contains the testimony of eight lay witnesses and two medical witnesses called by plaintiffs, as well as the testimony of sixteen lay witnesses called by the defendants. Practically all of the testimony relates to the testamentary capacity of the testatrix. No useful purpose would be served in reviewing the testimony of each witness individually. A cumulative summary of the testimony of the lay witnesses introduced by the plaintiffs shows that prior to the year 1945 Mrs. Strong was a very active woman in both business and social affairs and was in every respect a brilliant lady; that commencing in about 1945 she began to suffer with lapses of memory; was at times unable to recognize or call the names of some of her closest neighbors and friends; was unable to remember her deceased husband or to remember his name. In conducting her insurance business she attempted to collect premiums from those who had not purchased a policy; she was unable to remember the directions to her home; and was, in the opinion of the witnesses, mentally confused, unable to transact business, and was of unsound mind. Although none of these witnesses purported to have seen testatrix on the day of the execution of the will, the cumulative effect of their testimony shows that such condition existed between the years 1945 until 1954. The testimony of Doctor Fred Felder, a physician in Palestine, Texas called by the plaintiffs, shows that he commenced treating Mrs. Strong in 1945, treating her several times a year thereafter. That she came to him with numerous ailments and complaints of fatigue and nervous tension; that by March, 1950, she had begun to worry about her health to such an extent that he classified her as a hypochondriac. That in March, 1951, she complained of her head; of having a poor memory and not having any mind; that she continued to visit him periodically, complaining of fatigue, mental confusion, and loss of memory; that later that month he sent her to Doctor Titus Harris, a psychiatrist in Galveston, because he had come to suspect arteriolosclerosis, which was affecting her mental condition. That after her return, and after having received a report from Doctor Harris, he concluded that she was affected with an arteriolosclerotic degeneration of the brain which, in his opinion, commenced in 1950; that the effects of such a disease had caused a wasting away of the brain, resulting in a loss of memory; and that the disease was such that it could not be arrested or controlled but progressively grows worse; that in his opinion she was of unsound mind in March, 1951, at the time he sent her to Doctor Harris, and that although he had not seen her since June 18, 1952, he was of the opinion that she continued to be a person of unsound mind until on or about February 19, 1953, the date on which she executed her last will.

The testimony of Doctor Harris was introduced by plaintiffs by way of a deposition, it being the same deposition used in the hearing theretofore conducted before the County Court. He testified that he was a psychiatrist, having practiced such profession since 1919, during which time he had been associated with the University of Texas Medical Branch Hospital in Galveston; that after treating Mrs. Strong from March 28, 1951, to April 4, 1951, he diagnosed her case as cerebral arteriolosclerosis, which is a hardening of the arteries of the brain, causing mental deterioration which, as a general rule, progressively becomes worse; that he found her to be absent minded and to have lapses of memory; that her judgment for the transaction of business had become affected and that in his opinion she was unable to transact any business at that time and he would not expect her to be able to do so in the future and he recommended custodial care.

Plaintiffs introduced the deposition testimony of Doctor B. W. Cochran, it being the same deposition used by the plaintiffs in the hearing before the County Court. He testified that he was a neurosurgeon and psychiatrist in Beaumont, Texas; that he examined and prescribed medication for

Mrs. Strong on the 21st of February, 1952, at the request of Doctor Sam Barnes, her physician in Trinity, Texas. He testified that he saw her only one time and diagnosed her case as cerebral arteriolosclerosis; that at that time her judgment and memory was definitely impaired; that she had lapses of memory, difficulty in evaluating time and remembering dates; that her case was advanced and that her ability to transact business was impaired and that "in lay terms" she could be described as having an unsound mind. He recommended a legal guardian be appointed and that she have custodial care and assistance in handling her business.

A cumulative summary of the testimony of the fifteen lay witnesses introduced by the defendants shows all of them to have been friends and neighbors of Mrs. Strong of many years' standing, some of whom were related to her by blood or marriage; they all testified that they were of the opinion that Mrs. Strong was of sound mind throughout her life. Many of these witnesses testified that they had had business dealings with her through the year 1954 and she seemed to be normal in every respect, driving her automobile, issuing checks upon her bank account to cover her purchases for newspapers, cosmetics, hair dressing, and making donations to the school and church.

The testimony of Ernest Swift, the attorney who prepared the will, a witness called by defendants, shows that he had not known Mrs. Strong or any of her family prior to the time that she came to his office and requested him to prepare the will, that he talked to her about ten or fifteen minutes and she gave him the names of the devisees and instructed him with regard to the preparation of the will; that he did not remember as to whether or not she had the names of the devisees written on a piece of paper or whether he prepared the will while she was in the office or whether he prepared it and instructed her to return later for the execution thereof; that after the will was executed he never saw her thereafter

except perhaps on the streets; that at the time she executed the will he was of the opinion that she was of sound mind. Mrs. Bina Bird, one of the witnesses to the will, and a witness introduced by defendants, testified that she did not know Mrs. Strong nor was she related to any member of the family; that when she witnessed the will she was with Mrs. Strong only briefly. In reply to a question propounded by defendants' attorney, she stated that she was not able to say whether or not testatrix was capable of making a will.

For the purpose of showing testamentary capacity defendants introduced nine legal instruments in the nature of deeds and oil and gas leases which were shown to have been executed by testatrix on July 8, 1953, August 27, 1953, January 18, 1954, February 20, 1954, April 29, 1955, and August 26, 1955.

The record reflects that testatrix was declared to be a person of unsound mind by the County Court of Trinity County on April 2, 1956, and that her sister, Pearl Gray Elliott, one of the devisees under the will, was appointed as her guardian.

The record is before us without findings of fact and conclusions of law, although the judgment does reflect that the court found that testatrix was of unsound mind and did not have testamentary capacity.

Appellants' first point complains of the action of the trial court in admitting and considering as evidence the depositions of Doctors Harris and Cochran, contending that such depositions which were used in the trial in the County Court were not admissible in the trial on appeal in the District Court, because the trial in the District Court is by a trial de novo and hence the depositions taken and used in the County Court were in a different proceeding and were therefore not admissible. In other words, defendants claim that, although the depositions might have been perfectly good in the County Court, yet upon appeal to the District Court, Section 28 of the Pro-

bate Code, V.A.T.S., providing that all trials upon appeal shall be de novo, the depositions became of no effect and if plaintiffs desired the testimony of Doctors Harris and Cochran in the District Court they should have been called in person, or another deposition taken. The question raised will depend upon whether the trial de novo appeal is to be considered a new and independent suit or whether it is the same suit or proceeding as that in the lower court. We are of the opinion that upon appeal to the District Court, the case does not become a new suit, but is only a continuation of the original inquiry commenced in the County Court. Upon such appeal, only the issues involved in the lower court can be tried de novo, which is to say the case must remain in the District Court the same suit it was in the County Court. Pierce v. Foreign Mission Board, Tex.Com.App., 235 S.W. 552. Under the provisions of Rule 336, V.A.T.S., the appellant, upon written direction to the County Clerk, can require all "matters which he deems necessary to a review of the County Court ruling" to be included in the transcript to be sent up on appeal. The County Judge is authorized to order original papers or exhibits sent up either in lieu of the transcript or in connection therewith, and the District Court may by like order direct the Clerk to send it any original paper or exhibit deemed necessary for review. We think this rule though not specifically authorizing the use of depositions on the appeals, at least contemplates their use. We fail to see how it would serve any useful purpose to require the litigants to again take the same depositions covering the same subject matters in an appeal involving the same parties and issues as those involved in the County Court and therefore find no error in the ruling by the District Court permitting the use thereof on appeal. Although the precise question has never been before the courts of this state, the following authorities cited in appellees' brief support this conclusion. Florence Oil & Refg. Co. v. Reeves, 13 Colo.App. 95, 56 P. 674; In re Arrowsmith's Estate, 206 Ill. 352, 69 N.E. 77. Appellants' first point is overruled.

■ By point two appellants contend the court was in error in admitting and considering the opinion testimony of Doctor Harris concerning testatrix's mental capacity, because his opinion was based upon a history given to Doctor Sedbury by testatrix's brother, W. E. Gray, and sister, Mrs. Pearl Elliott and that since the history was not given directly to Doctor Harris, his opinion based thereon would be hearsay. Appellants further contend that the opinion of Doctor Harris was not admissible because it is based upon statements made by two of devisees under the will and would therefore be testimony which would violate Article 3716, Vernon's Ann.Texas St., known as the Dead Man's Statute.

■ The history referred to as being recorded by Doctor Sedbury was not made a part of the record before us. Not being apprised of the contents of the alleged statements, we are in no position to determine that the statements so made amounted to hearsay or a violation of the Dead Man's Statute. To hold that if such records had been offered, they would have tended to sustain the objection made to Doctor Harris' testimony, would be a mere speculation. Norris v. Lancaster, Tex.Com.App., 280 S.W. 574. But even if we assume that such statements were hearsay and further assume the doctor based his opinion to some extent upon hearsay, the testimony shows that testatrix was under Doctor Harris' observation and treatment for a period of seven days. His testimony further shows that he based his opinion upon his own personal knowledge, as well as the history which is said to be hearsay. Under these circumstances, we think the trial court was correct in overruling the objection to his opinion testimony, because it was clearly not based wholly upon hearsay. The rule undoubtedly is that, where it appears a witness' testimony is predicated both upon personal knowledge and upon hearsay, his testimony is admissible. On the other hand,

if the testimony of the witness is based wholly upon hearsay it is not admissible. A consideration of all of the testimony of Doctor Harris clearly shows that he did not base his opinion wholly upon hearsay, therefore, we think it is a question of the weight to be given such testimony, rather than a question of its admissibility. Norris v. Lancaster, supra; Schooler v. State, Tex. Civ.App., 175 S.W.2d 664.

■ We overrule appellants' contention that the opinion testimony of Doctor Harris was inadmissible because it violates Article 3716, V.A.T.S. As pointed out before, the statements made to Doctor Sedbury by the devisees are not to be found in the record. Therefore, even though we assume that Article 3716 might in some manner be applicable, not being apprised as to the contents or nature of the statements, we would be at a complete loss to say whether or not there was any error in the ruling of the court on this point.

■ ■ By point three appellants contend that the trial court erred in allowing Doctor Fred E. Felder to give his opinion as to the mental condition of testatrix, because his opinion was based upon a letter he received from Doctor Harris on March 5, 1951, containing a diagnosis of a cerebral arteriolosclerosis, hence such opinion, appellant alleges, was founded upon hearsay. Although Doctor Felder testified that the letter which he received from Doctor Harris "had an effect upon my thinking," he testified that it only corroborated his findings. He further testified that prior to the time he referred testatrix to Doctor Harris that he had already concluded that she was suffering with arteriolosclerosis which affected her mental processes. Considering all of his testimony, it is apparent that he meant to testify, and did testify, that he was basing his testimony upon his own personal knowledge. Even though it be conceded that Doctor Felder's opinion was partly based upon Doctor Harris' diagnosis, we hold that the trial court did not commit error in admitting this testimony, because

opinion testimony based in part, upon reports of others which are not in evidence but which the expert customarily relies upon in the practice of his profession is now recognized as being admissible. Jenkins v. United States, 113 U.S.App.D.C. 300, 307 F.2d 637; Schooler v. State, supra.

■ In point four appellants complain of the action of the court in admitting into evidence over their objection a letter written by Mrs. Pearl Elliott, one of the devisees, to Doctor Fred Felder, concerning testatrix's general health and expressing some doubt as to the reliability of her memory, contending that the admission of such letter was prohibited by the provisions of Article 3716, V.A.T.S., and was hearsay.

The letter reads as follows:

"Trinity, Texas, April 16th, 1951. Dear Dr. Felder:

"Mrs. Strong is very eager to see you. She thinks you can take care of the situation, and whatever you advise her to do, she will do just that.

"Dr. Felder, I am sure that you have heard from Dr. Harris. They told me that when I went down to Mrs. Strong that she should not live alone, so that is why I thought she should stay here. Confidentially, the three families do not get along very well. Naturally, she wants to go home, and I told her I would take her up for a day, but at this time both families have the flu. Mrs. Strong isn't well at all. She eats well enough, sleeps fair, I think, but has no interest in many things. Sits and reads most all the time and talks very little.

"Please don't mention me writing you. However, I'd like for you to tell her in my presence what you want her to do, for she will probably not remember all you tell her. However, I want you to be fair to her, and I know you will do this.

"Very truly yours, Mrs. Elliott."

Mrs. Elliott did not testify in the case. As will be noted, the letter was written before the execution of the will and hence before Mrs. Elliott was possessed of any interest under it. We believe the letter was inadmissible for the same reasons as are set forth in the opinion in Agricultural and Mechanical College v. Guinn, Tex.Civ. App., 326 S.W.2d 609, 615, involving a similar fact situation, from which opinion we take the following quotation:

"As a declaration against the interest of the declarant, Mrs. Guinn, it was inadmissible because it was made before the execution of the will and hence before Mrs. Guinn was possessed of any interest under it. Bass v. Bass, [Tex.Civ.App.] 207 S.W.2d 103, Austin Court of Civil Appeals, writ ref. N.R.E., and authorities there cited.

"Considered as an admission against a party to the suit we are also convinced that the letter was not admissible. As to the nature and admissibility of such admissions see McCormick and Ray, Texas Law of Evidence, Second ed., Secs. 1121 et seq.

"Generally it is stated that such an admission may be defined:

" ' * * * as any statement made or act done by one of the parties to any action or on his behalf which amounts to a prior acknowledgment by such party that one of the facts relevant to the issues is not as he now claims.' McCormick and Ray, supra, Sec. 1121.

"Such admissions are received as evidence of the truth of the matters asserted in them and constitute an exception to the hearsay rule. The justification for this exception is based, in a large part, upon the ground that the declarant may himself go upon the stand and deny, qualify or explain the alleged admissions. Sec. 1121, note 9, McCormick and Ray, supra.

"The declarant in this case, Mrs. Guinn, did not testify and there is no assurance that she would have been permitted to testify in denial or explanation of the statements contained in her letter. See: Art. 3716, Vernon's Ann.Civ.St.; McKibban v. Scott, 131 Tex. 182, 114 S.W.2d 213, 115 A.L.R. 1421. Thus one of the principal justifications for the exception is not shown to be present.

"To admit this letter in evidence for the purpose stated by appellants, i.e. to prove that Mrs. Guinn believed that her husband was then possessed of mental capacity to execute a will, would violate the rule against pyramiding inferences. The jury in order to formulate this finding, would have to infer first that the purported facts stated in the letter were evidence of the mental capacity of decedent and second to infer from such inference that Mrs. Guinn believed it. Inference must be based on and reasonably deduced from facts, not from other inferences. Texas & N.O.R. Co. v. Burden, 146 Tex. 109, 203 S.W.2d 522; 17 Tex. Jur. p. 247."

■■■ However, as has been pointed out in the beginning, the record is before us without findings of fact and conclusions of law. Under these circumstances, it is now well established that where trial was to the court without a jury, the trial judge may receive evidence in order to determine its admissibility and, finding it inadmissible, he may disregard it. There being no findings of fact or conclusions of law indicating that the judgment was based upon inadmissible evidence, it is presumed, on appeal, that the trial court disregarded evidence which might have been improperly received, and in no manner considered it in arriving at judgment. Furthermore, in view of all the other evidence before the court relating to the question of a lack of testamentary capacity, we believe the admission of the letter was harmless. Evans v. Martin, 6 Tex.Civ.App. 331, 25 S.W. 688; Gordon v. Pledger, Tex.Civ.App., 271

S.W.2d 344; Simpson v. Vineyard, Tex. Civ.App., 324 S.W.2d 276; Rule 434, T.R.C.P.

 By point five appellants contend that the judgment is so contrary to the overwhelming weight and preponderance of the evidence as to be clearly wrong and unjust. This question requires this court to consider and weigh all the evidence. We have carefully considered the evidence which supports the judgment, as well as that which is contrary to the judgment, and have come to the conclusion that we cannot say as a matter of fact that the judgment rendered by the trial court is so contrary to the overwhelming weight and preponderance of the evidence as to be clearly wrong and unjust. In Re King's Estate, 150 Tex. 662, 244 S.W.2d 660.

The judgment is affirmed.