Walter A. SMITH, Appellant,

v.

TENNESSEE LIFE INSURANCE COMPANY, Appellee.

No. 17895.

Court of Civil Appeals of Texas, Houston (1st Dist.).

May 21, 1981.

**830**

Bettye J. Lambert, Branch, Beller & Lambert, Houston, for appellant.

Ronald E. Cook, Baker & Botts, Houston, for appellee.

Before COLEMAN, C. J., and PEDEN and EVANS, JJ.

COLEMAN, Chief Justice.

Walter A. Smith, appellant, sued Tennessee Life Insurance Company, appellee, to recover the proceeds on a policy of life insurance issued to Darwin A. Smith. The trial court entered a taking nothing judgment based on a jury verdict that Darwin A. Smith had committed suicide. Smith attacks the sufficiency of the evidence to support the jury verdict. He further asserts that the court erred in admitting opinion testimony of experts that the deceased committed suicide. The judgment will be reversed and the cause remanded.

Darwin A. Smith died on May 28, 1972, as a result of a gunshot wound while a policy of insurance issued by Tennessee Life was in full force and effect. Only one special issue was submitted to the jury. The trial court instructed the jury that suicide means "the intentional taking of one's own life." No objection was made to this definition.

The appellant asserts that the trial court erred in admitting the testimony of Doctor Sheldon A. Green and Dr. Joseph Jachimczyk that the deceased committed suicide.

Dr. Jachimczyk testified that he did not physically examine the body and that the information he had of the circumstances surrounding the death of Darwin A. Smith was information obtained from "my people." He stated that based upon "the location of the wound as well as the information, the type of wound and the information submitted to me by my investigator, Coleman Gregory," he had an opinion that the cause of death was "self inflicted suicide."

Dr. Green performed a post-mortem examination upon the body of Mr. Smith. He testified that he found a contact-type gunshot wound located in the left lower chest ten inches below the level of the top of the breast bone and six inches to the left of the midline of the body. He testified that the contact-type gunshot wound occurs when the muzzle of the weapon is in physical contact with its target. He found powder burns and charring immediately around the wound of entry. He was then asked this question: "Based upon your post-mortem examination in the instant case, do you have an opinion based on reasonable medical probability as to whether Darwin A. Smith committed suicide?" He testified that he had an opinion that he did commit suicide.

Dr. Green is a medical doctor, a member of a number of medical associations, including the American Academy of Forensic Sciences. He has had considerable experience

in teaching pathology. At the time of the death of Mr. Smith, he was on the staff of the Harris County Medical Examiner, and at the time of the trial he was practicing forensic pathology as chief medical examiner for Clark County in Las Vegas, Nevada.

Dr. Jachimczyk is a qualified medical doctor and has extensive training in pathology. He also has a law degree and has had extensive training in legal medicine. He is board certified in anatomical pathology, clinical pathology, and forensic pathology. He testified that forensic pathology is a subspecialty of pathology that concerns itself primarily with the determination of the cause and manner of disease and/or injury, cause and manner of death, and anything that pertains potentially to courtroom litigation. Since 1960 he has been the chief medical examiner for Harris County, Texas. He is a member of an impressive number of medical and legal societies and associations.

In *Moore v. Grantham*, 599 S.W.2d 287, 298 (Tex.1980), the Supreme Court clarified the test for the admissibility of expert opinion testimony. First the court stated:

It has long been the law of this State that an expert's opinion may not be based solely on the statements or reports of third persons, unless those statements are properly in evidence and the opinion is sought through hypothetical questions. (Citations omitted)

While the courts have adopted a more liberal approach in allowing an expert's opinion testimony to be based partially on hearsay (citations omitted) this court has yet to adopt a rule permitting an expert's opinion testimony to be based solely on hearsay.

The Supreme Court further explained the rule by its discussion of *Lewis v. Southmore Savings Assn.*, 480 S.W.2d 180 (Tex.1972), in pointing out certain language of the court:

Further the opinions specifically declared, in rejecting the contention that certain expert opinion testimony should have been excluded as hearsay, that: "Dr. Yeager also testified from his own personal knowledge. An expert, when qualified as such, may give his opinion and relate sources which are customarily and usually relied upon by experts in the field upon which he partially relied in forming his opinion, together with his own personal knowledge, which support or tend to support that opinion.

*Moore v. Grantham*, supra at 289–290.

In a footnote to the opinion in *Moore v. Grantham*, the Supreme Court said:

Nothing in the instant case should be interpreted as questioning the long-standing tradition of having experts testify to hypothetical situations. The only practice what we find unacceptable is that of having an expert establish, as fact, those things of which he has no personal knowledge, and which can find no other basis in the evidence.

*Id.* at 290 n.4.

Before Dr. Green or Dr. Jachimczyk could give an opinion that Mr. Smith's death resulted from suicide, it was necessary that they reach a conclusion as to whether or not the deceased intended to do the act resulting in his death: that is, whether the shooting was a voluntary act of the deceased. *Aetna Life Insurance Company v. McLaughlin*, 380 S.W.2d 101 (Tex.1964). In *Winegarner v. State*, 505 S.W.2d 303 (Tex. Cr.App.1974) the court quoted with approval from McCormick and Ray, Texas Law of Evidence, § 1428:

In general, our courts permit a witness to testify as to his own intention or other state of mind when the same is material .... on the other hand decisions purporting to apply the opinion rule, uniformly exclude the testimony of a witness as to another person's state of mind.

Id. at 305.

The above quoted statement is supported by *Taylor v. Lewis*, 553 S.W.2d 153, 161 (Tex.Civ.App.—Amarillo 1977, writ ref'd n.r.e.).

■ A number of cases support the rule that where it appears a witness's testimony is predicated both upon personal knowledge and upon hearsay, his testimony is admissible, but where the testimony is based solely upon hearsay it is not admissible. *Gray v. Bird*, 380 S.W.2d 908 (Tex.Civ.App.—Tyler

1964, writ ref'd n.r.e.). However, as was pointed out in *Lewis v. Southmore Savings Association*, supra, the expert may not rely on just any hearsay. The hearsay source should be acceptable to the members of the expert's profession or class; also there should be some necessity for allowing the expert to use hearsay information and some justification for receiving his opinion when that information is not otherwise in evidence.

The United States Court of Appeals for the 5th circuit has held that a death certificate containing the conclusion that the death was a suicide was admissible into evidence by reason of certain Texas statutes and is sufficient to establish prima facie that the death was a suicide. The court also held that the finding of suicide was subject "under the controlling rules of evidence, to full explanation and contradiction." *Marker v. Prudential Ins. Co. of America*, 273 F.2d 258 (5th Cir. 1959). The opinion was by a divided court and the authorities pro and con on the question of the admissibility of a death certificate to prove suicide are set out in the opinions.

In this case we have no question involving the admissibility of a death certificate, but rather, in the case of the testimony of Dr. Jachimczyk, opinion evidence based upon the unsworn statement of an unknown investigator, and in the case of Dr. Green, based solely upon his post-mortem examination. Neither doctor was asked to assume any of the facts in evidence. The report of the results of the post-mortem examination, which was signed both by Dr. Green and by Dr. Jachimczyk, contained a statement indicating that the opinion concerning the cause of death was based not only on the objective findings, but also on a "history," the source and contents of which is not stated.

Dr. Jachimczyk's testimony that the cause of Mr. Smith's death was suicide was received over the objection that there had been no proper predicate for the opinion; that the witness was not competent to testify to an opinion; and that there was no competent evidence to support the opinion. The objection to Dr. Green's testimony was made on the ground that no proper predicate had been laid for him to form the basis of any opinion since it was based solely on a post-mortem examination. The trial court should have sustained both objections since the testimony showed that neither doctor had any basis in fact to form an opinion as to whether Mr. Smith intentionally shot himself. The report of private investigators is not the type of hearsay data that a doctor can rely upon in forming his expert opinion. The data could be introduced into evidence by the investigator's testimony and used in formulating a proper hypothetical question. *Moore v. Grantham*, supra. The trial court erred in admitting the testimony of Dr. Green and of Dr. Jachimczyk that suicide was the cause of Mr. Smith's death.

Darwin Smith married Jeri Barlow when he was nineteen years old. Their marriage ended in divorce three and one-half years later and the child of the marriage was placed in her mother's custody. Smith was given visitation rights which he was unable to exercise during the last few months before his death. He loved all children and especially his daughter. Three months after his divorce from Jeri in 1969, he married Marie Bostick. They were divorced about seven months prior to Smith's death. Smith maintained good relations with his former wives and both of them testified at this trial. Their testimony was to the effect that they had a good relationship with the deceased, that he was easygoing, happy, loved children, was active in sports, and never threatened to take his own life. Marie testified that deceased loved life and had "lots of feelings" for other people.

While still married to Marie, Smith started dating Faye Nillen. After his divorce, he moved into a mobile home on Culver Road, which is located next to a mobile home occupied by Shirley Lilley and her family. Lilley's husband and Smith worked together, and as a result, Smith became "extremely" close to both Shirley and her husband. Shortly after he moved into the mobile home, Faye Nillen and her two children came to live with him.

Mrs. Lilley testified that the deceased was like a brother to her. She stated that problems arose between the deceased and Nillen after she had moved in with him and that deceased asked her to move. Nillen would manipulate Smith through her children and would force Smith to do things he did not want to do. Mrs. Lilley testified that Smith knew that Nillen had a relationship with another man while she was living with Smith and that this made him unhappy. Smith and Nillen started having nightly arguments which became so loud, at least on Nillen's part, that they could be heard in their neighbors' trailers. At times Smith would leave and come over to the Lilley's trailer to spend the night. Smith told Mrs. Lilley that "he wanted to get Faye out of the trailer so that he could be happy for a change." Mrs. Lilley heard Mrs. Nillen say that she didn't want to leave because she didn't have anywhere to go. She had two children that were dependent upon Darwin and she wanted to stay. There was also testimony that Smith had fallen in love with another woman, whom he wanted to marry, but could not do so while he was still living with Faye Nillen. Mrs. Lilley further testified that "he could not have taken his own life" and that he was not depressed.

Deceased's father testified that deceased worked for him in the trucking business at a good salary, was in good health, was happy, was hard working, was to take over the business, had only $300 in debts at the time of death, never expressed any intent to take his own life, and a few days before death was running the business while he (the father) was at a convention and in a telephone conversation he told him that everything was going all right. Essentially the same testimony was given by Smith's mother, who also testified that in a telephone conversation on the week-end prior to his death she told deceased that it might be necessary for him to go out of town and pick up his father, to which he responded "okay, mom, let me know when."

The testimony Shirley Lilley gave at the trial as to the events which occurred immediately prior to and just after the death of Smith will be summarized. She was in her trailer when she heard the sound of Smith's pickup truck, and she saw him drive up to his trailer. A few minutes later she heard Faye's little girl, Celest, come running into the yard screaming that Smith had shot himself. Mrs. Lilley left her trailer and saw Smith stumbling into her yard with what appeared to be a large wound in his chest. Smith collapsed in her arms and then fell to the ground. Mrs. Lilley was not certain of the exact statement which Smith made to her at that time. At one time she stated that he said: "she didn't mean it." Later, she said that Smith told her "I am shot. She didn't mean to do it." Previously she had given a statement to an investigator, which statement was admitted into evidence for impeachment purposes. In this statement Mrs. Lilley said: "I asked him if he had did this to himself and he replied, 'yes, it's not her fault.'" At the trial she stated she did not remember this direct quotation, but that the investigator who came to her house prepared the statement in her presence. She read it over and the things that he put down in the statement were things that she told him in the course of a two-hour conversation. At that time she did not know and was not told that this was going to be used in a court of law so that she would have to testify exactly what Smith told her. She also testified at the trial that she told the investigator during the course of their conservation that "Darwin said she didn't mean it;" and the investigator did not incorporate that in the statement.

▮ There is a legal presumption against suicide. This has been called a "true presumption" which disappears when rebutted. This presumption, once rebutted, does not have weight as evidence. *Prudential Insurance Company of America v. Krayer*, 366 S.W.2d 779 (Tex.1963). The presumption places on the insurance company the burden of producing evidence. Once the defendant rebuts the presumption with facts showing suicide, the presumption is not to be weighed or treated as evidence. *Combined American Insurance Company v. Blanton*, 163 Tex. 225, 353 S.W.2d 847 (Tex. 1962).

Clearly, the presumption against suicide can be rebutted by circumstantial evidence. *Prudential Insurance Company of America v. Krayer,* supra. It is equally clear that the statement made by Mrs. Lilley to the investigator was admitted for impeachment purposes only. Prior inconsistent statements cannot be used as substantive evidence of the truth of the facts stated. R. Ray, Texas Practice, Law of Evidence, § 688 (1980).

Once the insurance company produced evidence, even though circumstantial, from which the jury could reasonably find that the deceased committed suicide the presumption is rebutted and is not to be treated as evidence. *Prudential Insurance Company v. Krayer,* supra. If the circumstantial evidence does no more than raise the possibility of suicide, then the presumption is not rebutted. *Green v. Tex. & P. Ry. Co.,* 125 Tex. 168, 81 S.W.2d 669 (1935).

To establish a fact by circumstantial evidence, the circumstances relied on must have probative force sufficient to constitute a basis of legal inference; it is not enough that they raise a mere surmise or suspicion of the existence of the fact or permit a purely speculative conclusion, and circumstances relied on must be of such a character as to be reasonably satisfactory and convincing and must not be equally consistent with the nonexistence of the ultimate fact. *Polasek v. Quinius,* 438 S.W.2d 828, 837 (Tex.Civ.App.—Austin 1969, writ ref'd n.r.e.).

A fact issue is raised by circumstantial evidence if from the evidence a reasonable person would conclude that the existence of the fact is more reasonable than its nonexistence. *Kirby Petroleum Company v. Jones,* 427 S.W.2d 681 (Tex.Civ.App.—Houston [14th Dist.] 1968, writ ref'd n.r.e.). All that is required is that the circumstances point to ultimate facts sought to be established with that degree of certainty as to make the conclusion reasonably probable. *McMillen Feeds, Inc. of Texas v. Harlow,* 405 S.W.2d 123 (Tex.Civ.App.—Austin 1966, writ ref'd n.r.e.).

The appellee asserts that the evidence before the jury concerning the death of Darwin Smith, considering only the evidence in favor of suicide and indulging all reasonable inferences in support of the jury's verdict, clearly establishes Smith's suicide. In support of this statement it says:

> The testimony of Shirley Lilley indicated quite clearly that Smith's life had become unbearable. He complained to her about money problems with his parents, his inability to see his daughter, and his continuing domestic warfare with Faye Nillen. In addition, Smith was aware that neither his parents or his best friends approved of Faye Nillen and of his living with her. Finally, he wanted to marry another woman but was unable to force Faye Nillen to leave his home. There was ample evidence to support the reasonable inference that Smith's personal life was so miserable and unhappy that he took his own life.

There is evidence that he died as a result of a gunshot wound. This wound was administered with Smith's own pistol pressed against his left chest. There was evidence that the gun was kept in Smith's truck. There was no direct evidence that anyone else was in the truck with him when he drove up to his house. After he was seen going towards his house trailer in the truck, he was next seen going towards Mrs. Lilley's trailer house wounded. The evidence would clearly support a finding that he died from a self-inflicted gunshot wound. The circumstances relied on to show that he intended to kill himself were weak and there were circumstances pointing to a contrary conclusion. The error of the trial court in admitting the statements of the two doctors that Smith's death was caused by suicide was calculated to and probably did result in the rendition of an improper judgment.

The judgment is reversed and the cause is remanded.