Opinion Issued September 25, 2003













In The

Court of Appeals

For The

First District of Texas






NO. 01-01-00955-CV






 TEXAS WORKERS' COMPENSATION COMMISSION AND
KATHERINE D. KAUS, Appellants


V.


WAUSAU UNDERWRITERS INSURANCE, Appellee






On Appeal from the 56th District Court

 Galveston County, Texas

Trial Court Cause No. 99CV0743






O P I N I O N


 Appellee, Wausau Underwriters Insurance (Wausau), sought judicial review
in the district court of Galveston County, Texas of a decision by intervening
appellant, the Texas Workers' Compensation Commission (TWCC), (1) awarding
appellant, Katherine Kaus (Mrs. Kaus), death benefits for the death of her husband,
Thomas Kaus (Mr. Kaus). Wausau sought review of two issues: (1) whether Mr.
Kaus's death was the result of a willful attempt to injure himself (suicide) and (2)
whether Mr. Kaus's death occurred within the course and scope of his employment. 
At trial, the parties stipulated that, if the jury determined that Mr. Kaus's death was
the result of suicide, his death did not occur within the scope of his employment. The
jury determined that Mr. Kaus's death occurred as a result of suicide. Thus, the trial
court entered judgment for Wausau and set aside the TWCC's award of death benefits
to Mrs. Kaus. In an issue of first impression, we address the admissibility of the
opinion of an assistant medical examiner that a death was a suicide, as well as of
death certificates and autopsy reports containing that opinion, under the Texas Rules
of Evidence. We affirm.Background


 Mr. Kaus was employed as a security guard for a 21-story building in
downtown Houston. On February 12, 1997, Mr. Kaus was reported missing by a
fellow security guard. After employees and police searched the building for several
hours, Mr. Kaus's body was found on a fifth-floor awning. The Houston Police
Department conducted a homicide investigation. Police officers questioned
employees of the building. There were no witnesses who had seen Mr. Kaus fall to
his death. Police were unable to determine from what location Mr. Kaus had fallen.
Because of the weather conditionscold, rain, wind, and lightningthe police did
not make a video recording of the roof of the building. The only evidence to support
a further homicide investigation was Mr. Kaus's missing wallet and watch and a
"brush burn" on the back of Mr. Kaus's head.

 The personal investigation of assistant medical examiner Dr. Parungao was
limited to the autopsy of Mr. Kaus's body. The autopsy revealed the cause of death
as a "crushed chest, abdomen, and pelvis." Based solely on police and investigator
reports, Dr. Parungao determined that Mr. Kaus had committed suicide. The reports
that Dr. Parungao reviewed included interviews with Mrs. Kaus and with co-workers
of Mr. Kaus. In Mrs. Kaus's interview, she admitted that Mr. Kaus had been
depressed for years and had threatened suicide on several occasions, including
sometime about a year before his death. Mr. Kaus's co-workers spoke of Mr. Kaus's
unhappiness with his marital relationship and of how his unhappiness was aggravated
by an extended visit by his mother-in-law, which explained why he had tried to work
as many weekends as possible in order to be out of the house. They also spoke of Mr.
Kaus's recent deterioration in appearance and dejection from having lost a lawsuit. 
They also mentioned that Mr. Kaus was concerned with his financial situation. Based
on the investigation's reports, Dr. Parungao entered on Mr. Kaus's death certificate
and on his autopsy report that the manner of death was "suicide" committed when Mr.
Kaus "jumped from height."

 Mrs. Kaus applied for workers' compensation death benefits. Wausau denied
the claim on the ground that Mr. Kaus's death was the result of suicide. Under the
insurance policy, death by suicide does not occur within the course and scope of
employment. To determine whether Mrs. Kaus was entitled to workers'
compensation death benefits, TWCC held an administrative contested-case hearing. 
TWCC found that Mr. Kaus's death was not the result of a willful attempt to injure
himself and thus that his death had occurred within the course and scope of his
employment. Subsequently, Wausau filed an administrative appeal with TWCC. 
The TWCC Appeals Panel affirmed the findings from the contested-case hearing. 
Wausau then challenged that decision by filing a petition for judicial review. 

 Before trial, Mrs. Kaus and TWCC had requested and received a ruling from
the court that excluded all opinions stating the ultimate conclusion that Mr. Kaus had
committed suicide. The court further determined that Dr. Parungao was not qualified
as an expert on suicide. Therefore, the court required the death certificate and
autopsy report, which were prepared by Dr. Parungao, to be redacted to omit the
manner of death as "suicide" caused when Mr. Kaus "jumped from height."

 During Wausau's presentation of the case, Wausau sought to present the
deposition testimony of Dr. Conway. (2) Mrs. Kaus and TWCC objected to the
inclusion of portions of the deposition involving Dr. Conway's opinions on whether
Mr. Kaus committed suicide and on the assistant medical examiner's findings. The
court decided to allow some of the testimony, while excluding the rest. (3) In reading
from Dr. Conway's testimony, Wausau included the following:

 Wausau: In your recollection, is there anything in that
report that--that you thought was inconsistent
with suicide, or was it just the whole thing? 
 Dr. Conway: I--I don't--I can't remember what the report
says, so I can't--I can't answer that very well
right now. 
 
 Wausau: Okay. Well, if--but you are rendering an
opinion here today that it's highly unlikely that
he committed suicide. And you base that upon
that report you read; is that correct? 
 
 Dr. Conway: No. I based it on knowing him and--and
what--I'm sticking to what I said before
and--when I had a better recollection of
everything going on. 
 


(Emphasis added.) 

 Wausau continued to ask Dr. Conway about information contained in the
assistant medical examiner's report and that information's consistency with suicide. 
After several questions and answers, the deposition continued with this:

 Wausau: Okay. If someone were to step off the roof of
that building and land on the fifth floor awning,
as Mr. Kaus did, what additional observations
would you expect that would support a finding
of suicide? 
 Dr. Conway: I have no opinion. 
 
 Wausau: No opinion whatsoever? 
 
 Dr. Conway: None. 
 
 Wausau: So your opinion as to it's highly unlikely, you're
withdrawing it at this time? 
 
 Dr. Conway: No. I have no opinion about the forensic
activity. I couldn't--I have--I don't know
whether people tumble or--I have no-- 
 
 Wausau: Okay. 
 
 Dr. Conway: --I have no forensic opinion. 
 
 Wausau: Okay. And I'm--I'm--I want to make sure
we're on the same page. So your opinion is
based upon your relationship with Mr. Kaus
over the period of years? 
 
 Dr. Conway: Yes. 
 
 Wausau: And it has nothing whatsoever to do with the
Medical Examiner's report or the police officer's
report? 
 
 Dr. Conway: No. 
 
 Wausau: Okay. And you consider that information to not
be relevant to your opinion on whether or not he
committed suicide? 
 
 Dr. Conway: The--the--I'm relying on my previous
testimony. Because I do not recall having seen a
document that Mrs. Kaus brought to me, and
that document did not have anything in it that
convinced me that--that he had
commit--committed suicide. 
 


(Emphasis added.) 

 After Wausau concluded its presentation of Dr. Conway's testimony, Mrs.
Kaus and TWCC presented excerpts of Dr. Conway's testimony. Mrs. Kaus and
TWCC announced the page and line numbers to be read and offered the following:

 Mrs. Kaus/TWCC: Do you have an opinion based upon
reasonable medical probability, as
Mrs.--Mr. Kaus's physician and after
having treated him for 20-some-odd years
and certainly hands-on treatment for last
6 to 12 months of his life, as to whether or
not he committed suicide on February 12,
1997?
 


 Dr. Conway: I think that's highly unlikely. (4) 


 Wausau raised no objections before or during this proffer. However, at the
next break, the trial court stated sua sponte that Mrs. Kaus and TWCC "had opened
the door" by reading Dr. Conway's opinion on whether Mr. Kaus had committed
suicide. Mrs. Kaus and TWCC objected, stating that their inclusion of Dr. Conway's
opinion was in response to Wausau's inclusion of his opinion. Wausau denied
including Dr. Conway's opinion. To sanction Mrs. Kaus and TWCC for having
opened the door, the court stated that it would allow Dr. Parungao's opinion
testimony. The court also admitted into evidence the death certificate showing
"suicide," but not "jumped from height," and the autopsy report concluding that Mr.
Kaus's death was a suicide. The jury subsequently found that Mr. Kaus had
committed suicide, and the trial court set aside the TWCC's decision.

Issues for Review


 In two issues presented for review, Mrs. Kaus and TWCC contend that the trial
court committed harmful and reversible error in (1) admitting Dr. Parungao's opinion
testimony on the issue of suicide and (2) admitting the death certificate and autopsy
report concluding that suicide was the manner of death.

 Wausau, in support of the trial court's decision, contends that the trial court
properly admitted the death certificate and Dr. Parungao's opinion testimony, both
pursuant to case law and as a remedy for violating the court's order by "opening the
door." 

A. Standard of Review

 The decision to admit or to exclude evidence is left to the discretion of the trial
court and is reviewed for an abuse of discretion. Moore v. Bank Midwest, N.A., 39
S.W.3d 395, 401-02 (Tex. App.Houston [1st Dist.] 2001, pet. denied). To obtain
reversal of a judgment based on an error in the admission or exclusion of evidence,
an appellant must show that the trial court's ruling was error and that the error
probably resulted in the rendition of an improper judgment. Id. 

B. Whether the Trial Court Erred in Concluding that Mrs. Kaus and TWCC
Had Opened the Door

 

 As a preliminary matter, the trial court had stated that neither party could offer
evidence of anyone's opinion regarding suicide. When the parties approached the
bench before Dr. Conway's deposition testimony was read by Wausau, objections
were properly made by Mrs. Kaus and TWCC. The trial court overruled the
objections as to certain pages and lines of the deposition. Wausau then read from the
allowable part of the deposition. This testimony included Dr. Conway's opinion that
Mr. Kaus had not committed suicide. On cross-examination, Mrs. Kaus and TWCC
informed the court and Wausau what pages and lines they would read. Wausau did
not object. Because the court had overruled Mrs. Kaus and TWCC's objections to the
inclusion of the specific lines that were read, both parties were allowed to include this
testimony. Therefore, based on these facts, the trial court erred by determining sua
sponte that Mrs. Kaus and TWCC had "opened the door." The trial court had broad
discretion on whether to admit or to exclude evidence, (5) but its decision to sanction
Mrs. Kaus and TWCC by including previously excluded evidence was based on a
mistaken belief as to which party had opened the door.

 Because the trial court erred in sanctioning Mrs. Kaus and TWCC for having
opened the door, this Court must now determine whether this error, which led to the
admission of Dr. Parungao's opinion testimony and the death certificate and autopsy
report, constitutes reversible error. A finding that the trial court committed reversible
error requires this Court to conclude that admitting the death certificate, the autopsy
report, and Dr. Parungao's testimony "probably caused the rendition of an improper
judgment." Tex. R. App. P. 44.1. 

C. Harm


 1. Whether the trial court's error in admitting Dr. Parungao's expert
opinion as a sanction was rendered harmless because his opinion
was admissible for another reason


 Mrs. Kaus and TWCC's issue two challenges the admissibility of Dr.
Parungao's testimony that, in his opinion, Mr. Kaus had committed suicide. In
forming this opinion, Dr. Parungao acknowledged that he had relied upon the
investigation reports made by police officers and an investigator from the Medical
Examiner's Office. Dr. Parungao further stated that he had performed the autopsy,
which revealed only the cause, but not the manner, of death. 

 Mrs. Kaus and TWCC objected that Dr. Parungao's opinion regarding suicide
was based on hearsay and was thus inadmissible. Although the investigation reports
are hearsay, Rule of Evidence 703 allows expert opinion testimony that relies on facts
or data collected or reported by another when those facts or data are the type
"reasonably relied upon by experts in the particular field in forming opinions." Tex.
R. Evid. 703. (6) This type of expert opinion testimony is allowed even if the
underlying facts or data are themselves inadmissible. Id. Even though the police and
investigator reports contained hearsay, Dr. Parungao testified that information
gathered in such investigations is of the type customarily relied upon in forming
opinions as to the manner of death. Therefore, Dr. Parungao's expert opinion that
Mr. Kaus's manner of death was "suicide" caused when Mr. Kaus "jumped from
height" was admissible under Rule 703 absent an objection that its probative value
was outweighed by the risk of prejudicial harm. See Sosa v. Koshy, 961 S.W.2d 420,
427 (Tex. App.Houston [1st Dist.] 1997, pet. denied). Neither Mrs. Kaus nor
TWCC made a prejudicial-harm objection at trial to the admission of Dr. Parungao's
opinion in the death certificate or through his testimony. See Tex. R. Evid. 705(d)
(providing for a balancing test to determine whether the danger that the underlying
facts might be used for a purpose other than as an explanation or support for the
expert's opinion outweighs their value as an explanation or support, or are otherwise
unfairly prejudicial). Even if a prejudicial-harm objection had been made, both Dr.
Parungao and the investigating officers testified at trial. Mrs. Kaus and TWCC were
able to conduct cross-examination. Cross-examination could minimize any
prejudicial effect. Furthermore, opinion testimony involving the ultimate issue to be
decided by the jury is admissible and is not considered prejudicial on that basis. See
Tex. R. Evid. 704. 

 Mrs. Kaus and TWCC further objected that, because the trial court had
initially sustained their Daubert (7) challenge to Dr. Parungao's credentials, the trial
court erred in later admitting Dr. Parungao's opinion testimony as a sanction. The
basis for the trial court's initial ruling that Dr. Parungao's opinions regarding suicide
and falling from height were not admissible was that the opinions were not scientific. 
By that, the trial court meant that only part of Dr. Parungao's opinion was based on
science, i.e., his determination of cause of death (crushed chest, abdomen, and pelvis),
from his forensic examination of the body. However, part of Dr. Parungao's opinion
was also based on investigations conducted by others, i.e., his determination of
manner of death (suicide, jump from height). It was the latter, "non-scientific"
opinion testimony that the trial court had initially redacted from both the death
certificate and autopsy report and had excluded from Dr. Parungao's testimony.

 The trial court erred in initially concluding that Dr. Parungao was not qualified
to render an expert opinion regarding manner of death, in addition to cause of death. 
Rule 702 states: 

If scientific, technical, or other specialized knowledge will assist the
trier of fact to understand the evidence or to determine a fact in issue, a
witness qualified as an expert by knowledge, skill, experience, training
or education may testify thereto in the form of an opinion or otherwise.


Tex. R. Evid. 702. In Gates v. State, relied upon by Wausau, this Court found that
a police officer who had seen several suicide victims, both in his experience as a
police officer for 11 years and when he had worked in a funeral home in high school,
was qualified by experience to give an expert opinion on whether the victim had
committed suicide. See id., 24 S.W.3d 439, 443-44 (Tex. App.Houston [1st Dist.]
2000, pet. ref'd). Dr. Parungao had vastly more experience with suicide victims than
did the police officer in Gates. Dr. Parungao's curriculum vitae was in evidence to
show that he had over 19 years of experience as an assistant medical examiner, and
his testimony showed he had much experience with deaths resulting from falls from
heights. In addition, Dr. Parungao testified that his job entailed performing autopsies
and reviewing investigation reports to determine cause and manner of death. This
experience was more than enough to qualify Dr. Parungao to give an expert opinion
on the manner of death, including suicide by jumping from height. Appellant's
challenge to Dr. Parungao's opinions regarding "suicide" and "jump from height"
were not based on any failure of Dr. Parungao to follow the usual protocol in making
his decisions, but on his alleged incompetency to state any opinion because it was
based on the investigations of others.

 Mrs. Kaus and TWCC rely on Gray v. Bird and this Court's opinion in Smith
v. Tennessee Life Insurance Co. to support their contention that a medical examiner's
opinion on suicide is inadmissible when it relies upon reports of investigators. Gray,
380 S.W.2d 908 (Tex. Civ. App.Tyler 1964, writ ref'd n.r.e.); Smith, 618 S.W.2d
829 (Tex. Civ. App.Houston [1st Dist.] 1981, no writ). Both cases, however, were
decided before the Texas Rules of Evidence were codified in 1983. Importantly, In
Smith, the rationale for holding that it was error to admit the medical examiner's
opinion that the manner of death was suicide was that the report of a private
investigator was not the type of hearsay data upon which a doctor could rely in
forming his expert opinion. Id., 618 S.W.2d at 832. The longtime status of the law
had been that an expert opinion could not be based solely on statements or reports of
third parties, unless those statements were properly in evidence and the opinion was
sought through hypothetical questions. Id. at 831 (quoting Moore v. Graham, 599
S.W.2d 287, 289 (Tex. 1980)). Now, in contrast, rule 705(a) provides that the expert
may testify to the underlying facts or data upon which his opinion is based. Tex. R.
Evid. 705(a).

 The Texas Rules of Evidence were based on the Federal Rules of Evidence,
which "favor the admissibility of relevant evidence, leaving it to the parties to argue
the weight that should be given to the evidence." Brooks v. Chrysler Corp., 786 F.2d
1191, 1198 (D.C. Cir. 1986). In light of the changes made upon adoption of the
Texas Rules of Evidence, including rules 702 through 705, which favor admissibility,
particularly of matters typically relied upon in forming the opinion and regardless of
whether those matters are themselves otherwise admissible, neither Gray nor Smith
supports appellant's contention. 

 Although the trial court initially had determined that Dr. Parungao was not
qualified as an expert on suicide, the court would not have abused its discretion if it
had later decided to admit Dr. Parungao's expert opinion. See Keo v. Vu, 76 S.W.3d
725, 730 (Tex. App.Houston [1st Dist.] 2002, pet. denied) (stating that trial court
has broad discretion to determine the admissibility of expert testimony). A trial court
does not err if it makes the correct ruling for the wrong reason. See Hawthorne v.
Guenther, 917 S.W.2d 924, 931 (Tex. App.--Beaumont 1996, writ denied) (stating
that "[a] trial court cannot abuse its discretion if it reaches the right result, even for
the wrong reason."). Therefore, the trial court's error in admitting Dr. Parungao's
opinion testimony as a sanction was harmless. See Tex. R. App. P. 44.1.

 Accordingly, we overrule Mrs. Kaus and TWCC's issue two.

 2. Whether the trial court's error inadmitting the unredacted death
certificate as a sanction was rendered harmless because the
certificate's contents were admissible for another reason


 Mrs. Kaus and TWCC's issue one first challenges the admissibility of Dr.
Parungao's opinion in the death certificate. 


 a. Admissibility of the death certificate as prima facie evidence
of the facts stated therein


 Mrs. Kaus and TWCC objected to the admission of Mr. Kaus's death certificate
on the basis of section 191.052 of the Texas Health and Safety Code. See Tex.
Health & Safety Code Ann. § 191.052 (Vernon 2001). The death certificate was
certified by the local registrar and stated that the manner of Mr. Kaus's death was
"suicide" when he "jumped from height."

 Texas law provides that a copy of a death certificate "certified by the state
registrar is prima facie evidence of the facts stated in the record." Id. This statute
does not appear to have been addressed by any Texas courts, but its predecessor,
Article 4477, Rule 54a of the Revised Civil Statutes, has been addressed. Former rule
54a was enacted in 1927 and repealed and replaced by section 191.052 in 1989. See
Act of May 18, 1989, 71st Leg., R.S., ch. 678, § 1, 1989 Tex. Gen. Laws 2230, 2401. 
Former rule 54a provided that a copy of a death certificate, "when properly certified
by the State Registrar, shall be prima facie evidence in all courts and places of the
facts therein stated." Id. 

 Most courts interpreting former rule 574a held that, unless the death certificate
was certified by the state registrar as provided by the statute, the death certificate was
either totally inadmissible or at least inadmissible as prima facie evidence. (8) When the
Texas Legislature repealed article 4477 and replaced it with section 191.052 of the
Texas Health and Safety Code, the Legislature changed nothing substantively. 
Section 191.052 was merely a plain-language version of former rule 54a. Section
191.052 states, "A copy of a birth, death, or fetal record registered under this title that
is certified by the state registrar is prima facie evidence of the facts stated in the
record." Tex. Health & Safety Code Ann. § 191.052 (emphasis added). Had the
Texas Legislature wanted to include local registrars and justices of the peace in the
statute, it had that opportunity in 1989 when it repealed former rule 54a and replaced
it with section 191.052. In light of most courts' finding that admissibility of a death
certificate requires strict compliance with the statute, namely certification by the state
registrar, and the Texas Legislature's keeping virtually the same language when
replacing former rule 54a with section 191.052, this Court holds that, in order for a
death certificate to be admissible as prima facie evidence of the facts stated therein,
it must be certified by the state registrar. Certification by a local registrar does not
satisfy the plain language of the statute. Therefore, Mr. Kaus's death certificate was
not admissible as prima facie evidence of the facts stated therein under section
191.052. (9) 



 b. Admissibility of the death certificate as a record of vital
statistics 


 Mrs. Kaus and TWCC also objected to the death certificate on the ground that
it constituted or that it contained hearsay. Rule 803(9) of the Texas Rules of
Evidence provides an exception to the hearsay-exclusion rule for records of vital
statistics: "Records or data compilations, in any form, of births, fetal deaths, deaths,
or marriages, if the report thereof was made to a public office pursuant to
requirements of law." Tex. R. Evid. 803(9). Mr. Kaus's death certificate was
recorded by the City of Houston's Bureau of Vital Statistics pursuant to the Texas
Health and Safety Code. See Tex. Health & Safety Code Ann. § 191.022(b)
(Vernon 2001). Therefore, the death certificate appears to have been admissible
under the plain language of Rule 803(9).

 No reported Texas case has addressed the admissibility of a death certificate,
or of any other record of vital statistics, pursuant to rule 803(9). There is one
unpublished opinion in which the court found that a death certificate was not only
admissible pursuant to rule 803(9), but that its contents were also admissible, despite
an additional hearsay objection to information contained within the certificate. See
Martinez v. State, 1996 WL 179370 at *1 (Tex. App.--Dallas Apr. 16, 1996, no pet.)
(not designated for publication). In Martinez, the hearsay information was the true
name of the deceased supplied by a family member, so that the death certificate
contained both the assumed name, under which the body had been delivered to the
Dallas Medical Examiner's Office, and the true name, which was the name alleged
in the indictment. See id.

 We agree with the holding of Martinez regarding the admissibility of the
death certificate itself pursuant to rule 803(9). This rule provides an alternative
avenue of admissibility for death certificates, in addition to section 191.052 of the
Texas Health and Safety Code. Of course, rule 803(9) does not provide that
evidence admitted pursuant to its hearsay exception is admissible as prima facie
evidence of the facts stated therein, as does section 191.052.

 We are not persuaded by Martinez, however, that the contents of the death
certificate are automatically admissible pursuant to rule 803(9). Even though a
document is admissible pursuant to a hearsay exception, further objections to hearsay
contained within the document must be examined separately. See Tex. R. Evid. 805
("Hearsay included within hearsay is not excluded under the hearsay rule if each part
of the combined statements conforms with an exception to the hearsay rule provided
by these rules."); Gen. Motors Corp. v. Harper, 61 S.W.3d 118, 125-26 (Tex.
App.--Eastland 2001, pet. filed) (stating that, although patents themselves were
admissible under public-records exception to hearsay-exclusion rule, statements
within patents constituted inadmissible hearsay). Accordingly, we address the
separate issue of the admissibility of Dr. Parungao's opinion, based on hearsay,
within the death certificate.

 The objected-to statements within the death certificate were Dr. Parungao's
opinions on the manner of death. As we have already held, Dr. Parungao's expert
opinion regarding manner of death, even though based on hearsay information
provided by investigators, is admissible pursuant to rule 705(a). Because Dr.
Parungao's opinion was admissible, and because the death certificate was admissible
under rule 803(9), the trial court would not have erred if it had admitted the
unredacted death certificate containing Dr. Parungao's opinion that Mr. Kaus had
committed suicide. Therefore, the error in admitting the unredacted death certificate
as a sanction was harmless. See Tex. R. App. P. 44.1; see also Hawthorne, 917
S.W.2d at 931 ("A trial court cannot abuse its discretion if it reaches the right result,
even for the wrong reason.")

 We overrule that portion of Mrs. Kaus and TWCC's issue one challenging the
admissibility of Dr. Parungao's opinion, within the death certificate, that Mr. Kaus
committed suicide.

 3. Whether the trial court's error in admitting the unredacted autopsy
report as a sanction was harmless because the report's contents
were admissible for another reason


 Under issue one, Mrs. Kaus and TWCC combine their argument that the
autopsy report contained inadmissible hearsay with their argument that the death
certificate contained inadmissible hearsay. Although there is no separate briefing
explaining why the autopsy report is inadmissible, we will address the admissibility
of the autopsy report, and of Dr. Parungao's opinion regarding suicide recited therein,
because of the similarity of those arguments with the death-certificate argument in
issue one.

 An autopsy report is admissible under the public-records hearsay exception of
the Texas Rules of Evidence. See Tex. R. Evid. 803(8)(C); Garcia v. State, 868
S.W.2d 337, 339-40 (Tex. Crim. App. 1993). Dr. Parungao, as an assistant medical
examiner, made the autopsy report "pursuant to authority granted by law," as required
to fit the exception. See Tex. R. Evid. 803(8)(C). Therefore, under rule 803(8)(C),
the autopsy report itself was admissible. 

 Mrs. Kaus and TWCC objected to the admissibility of the autopsy report
because it contained Dr. Parungao's opinion that Mr. Kaus had committed suicide. 
We have already held that Dr. Parungao's expert opinion that suicide was the manner
of death was admissible. Thus, the autopsy report's recitation of Dr. Parungao's
opinion was also admissible. Consequently, the trial court would not have erred if
it had admitted the unredacted autopsy report for this reason. Therefore, the error in
admitting the unredacted autopsy report as a sanction was harmless. See Tex. R. App.
P. 44.1; see also Hawthorne, 917 S.W.2d at 931.

 We overrule that portion of Mrs. Kaus and TWCC's issue one challenging the
admissibility of Dr. Parungao's opinion, within the autopsy report, that Mr. Kaus had
committed suicide.

Conclusion

 We affirm the judgment of the trial court.

 


 Tim Taft

 Justice


Panel consists of Justices Taft, Alcala, and Price. (10)

Justice Price, dissenting.


En banc consideration was requested. Tex. R. App. P. 41.2(c).


A majority of the Court did not vote in favor of en banc consideration of this case.


Justice Jennings, joined by Justice Hedges, dissenting from the denial of en banc
consideration. Tex. R. App. P. 47.5.
1. TWCC appears as an intervenor and appellant pursuant to Texas Labor Code
section 410.254. Tex. Lab. Code Ann. § 410.254 (Vernon Supp. 2003).
2. Dr. Conway was Mr. Kaus's regular physician.
3. The record is unclear as to the exact testimony excluded because Dr. Conway's
deposition was not included in the exhibits for the record.
4. Mrs. Kaus and TWCC had initially objected to the page from which they read, 
but the court had overruled these objections. 
5. See E.I. du Pont de Nemours & Co. v. Robinson, 923 S.W.2d 549, 558 (Tex.
1995). 
6. Rule 703 states:


The facts or data in the particular case upon which an expert bases an
opinion or inference may be those perceived by, reviewed by, or made
known to the expert at or before the hearing. If of a type reasonably
relied upon by experts in the particular field in forming opinions or
inferences upon the subject, the facts or data need not be admissible in
evidence.


 Tex. R. Evid. 703.
7. Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S. Ct. 2786
(1993).
8. See Hedtke v. Transport. Ins. Co., 383 S.W.2d 474, 475 (Tex. Civ. App.San
Antonio 1964, writ. ref'd n.r.e.) (holding that trial court properly excluded
death certificate certified by local registrar because statute required
certification by state registrar); Tex. Reserve Life Ins. Co. v. Dees, 368 S.W.2d
886, 888 (Tex. Civ. App.San Antonio, 1963, writ ref'd n.r.e.) (finding death
certificate prepared by justice of peace and not signed by state registrar was
inadmissible to prove cause of death); Armstrong v. Employers Cas. Co., 357
S.W.2d 168, 170 (Tex. Civ. App.Waco 1962, no writ) (holding that former
rule 54a applied only to copies of death certificates certified by the State
Registrar and not those certified by local registrars); Tichenor v. Little, 279
S.W.2d 379, 380 (Tex. Civ. App.Galveston 1955, writ ref'd n.r.e.) (stating
that death certificate without medical certification by attending physician was
not in full compliance with article 4477 and thus inadmissible); Universal Life
& Acc. Ins. Co. v. Ledezma, 61 S.W.2d 165, 166 (Tex. Civ. App.Beaumont
1933, writ dism'd) (holding that death certificate certified by city or local
registrar was properly excluded because "the power to make certified copies
of the records of births and deaths receivable evidence 'in all courts' is
conferred upon the State Registrar."); see also Continental Cas. Ins. Co. v.
Fountain, 257 S.W.2d 338, 343 (Tex. Civ. App.Dallas 1953, writ ref'd)
(finding death certificate was certified by state registrar and was therefore
prima facie evidence that decedent died of cancer); Reserve Life Ins. Co. v.
Shacklett, 412 S.W.2d 920, 922 (Tex. Civ. App.Tyler 1967, writ ref'd n.r.e.)
(noting affirmatively that death certificate fully complied with art. 4477 and
was certified by state registrar, making it was admissible). Contra Campbell
v. State, 632 S.W.2d 165 (Tex. App.Waco 1982, no writ) (admitting death
certificate certified by local registrar as prima facie evidence of the facts stated
in record because source of information was reliable).
9. Even if Mr. Kaus's death certificate were admissible pursuant to section
191.052 as prima facie evidence of the facts stated therein, the question
remains whether "suicide" and "jumped from height" in the death certificate
are "facts stated therein" or mere opinions. Courts are split as to whether
findings such as "suicide" or "accident" in a death certificate are facts or
opinions.


 Some courts interpreted former rule 54a to mean that everything included in
a death certificate was a fact, but that the those facts were not binding on the
jury and were subject to evidence to the contrary. See Marker v. Prudential
Ins. Co. of Am., 273 F.2d 258, 264 (5th Cir. 1959) (admitting death certificate
reciting "accident" as prima facie evidence, but stating that certificate was
subject to full explanation and contradiction); Shacklett, 412 S.W.2d at 920,
922 (finding that "accident" in death certificate was fact); Standard Ins. Co. v.
Thomas, 383 S.W.2d 447, 452 (Tex. Civ. App.--Tyler 1964, no writ) (stating
death certificate could not be considered as conclusive evidence, but was of
some probative force); Aetna Life Ins. Co. v. McLaughlin, 370 S.W.2d 229,
236 (Tex. Civ. App.--Houston [1st Dist.] 1963) (stating that death certificate
that recited suicide as manner of death created prima facie case of suicide,
which beneficiary could refute), rev'd on other grounds, 380 S.W.2d 101 (Tex.
1964); Southland Life Ins. Co. v. Brown, 121 S.W.2d 653, 654 (Tex. Civ.
App.--Waco 1938, no writ) (stating that jury did not have to accept recitations
in death certificate as conclusive proof that insured had committed suicide). 

 

 Courts that held that a finding of "suicide" or "accident" in a death certificate
was an opinion excluded the death certificate from evidence or at least redacted
it. See Serv. Mut. Ins. Co. of Tex. v. Banke, 155 S.W.2d 668, 669 (Tex. Civ.
App.San Antonio 1941, writ ref'd) (stating that conclusion of "accident" in
death certificate was inadmissable); Templin v. State, 677 S.W.2d 541, 545
(Tex. App.--Eastland 1983) (stating that justice of peace's notation of
"accident" in death certificate was not fact), rev'd on other grounds, 711
S.W.2d 30 (Tex. Crim. App. 1986); Tex. Employers' Ins. Ass'n v. Gregory, 534
S.W.2d 166, 168 (Tex. App.--Houston [14th Dist.] 1976, no writ (stating that
"suicide" was not fact as contemplated by former rule 54a); Armstrong v.
Employers Cas. Co., 357 S.W.2d 168, 172 (Tex. Civ. App.--Waco 1962, no
writ) (stating that coroner's conclusion of suicide in death certificate was
inadmissable to prove manner of death); Langlitz v. Am. Nat'l Ins. Co., 146
S.W.2d 484, 487 (Tex. Civ. App.Eastland 1940, writ dism'd) (stating that
finding of suicide in death certificate was conclusion of coroner and
inadmissable hearsay); Washington Nat'l Ins. Co. v. Chavez, 106 S.W.2d 751,
752 (Tex. Civ. App.El Paso 1937, writ dism'd) (holding that trial court
properly excluded death certificate, which stated "suicide").


 Because the death certificate was not admissible pursuant to section 191.052,
we need not weigh in on this issue.
10. The Honorable Frank C. Price, former Justice, Court of Appeals, First District
of Texas at Houston, participating by assignment.