**Bobby TEMPLIN, Appellant,**

v.

**STATE of Texas, Appellee.**

**No. 11–81–167–CR.**

Court of Appeals of Texas, Eastland.

Feb. 17, 1983.

Rehearing Denied Feb. 17, 1983.

---

Charles Scarborough, Scarborough, Black, Tarpley & Scarborough, Abilene, for appellant.

Russell Carroll, Dist. Atty., Sweetwater, for appellee.

DICKENSON, Justice.

The main issue on appeal is whether there was sufficient circumstantial evidence to support the conviction for murder and to exclude any reasonable hypothesis of accidental death or suicide.

The jury found that Bobby Templin caused the death of his wife, Rhonda Templin, by intentionally causing a "live bare-wire electric cord" to come in contact with her body while she was bathing or showering in their home at Roby, Fisher County, Texas, on April 11, 1976.[1] After hearing additional evidence, the jury assessed his punishment at confinement for 99 years. Bobby Templin appeals. We affirm the conviction.

■ Appellant has briefed five grounds of error. The first ground[2] challenges the sufficiency of the evidence. Our review of the evidence will be conducted pursuant to the rule stated in *Flores v. State*, 551 S.W.2d 364 at 367 (Tex.Cr.App.1977):

---

**1.** Appellant was indicted on May 20, 1981, and tried on November 2–10, 1981. Much of the State's case was developed in a separate civil lawsuit which was filed by Rhonda's parents.

**2.** Ground One argues: "The trial court erred in not granting the appellant's motion for instruct-ed verdict as the circumstantial evidence in this case did not exclude every reasonable hypothesis except that of guilt of the appellant and the proof offered amounted to no more than a strong suspicion at best."

It is well established that a conviction on circumstantial evidence cannot be sustained if the circumstances do not exclude every other reasonable hypothesis except that of the guilt and proof amounting only to a strong suspicion is insufficient.

The jury was charged on the requirements for a conviction based upon circumstantial evidence.[3] The rule stated in *Flores* was recently discussed in *Earvin v. State*, 632 S.W.2d 920 at 923 (Tex.App.—Dallas [en banc] 1982, pet'n ref'd), where the majority opinion stated:

> In determining the relevant circumstances the evidence must be viewed in the light most favorable to the State, but the evidence, when so viewed, must establish more than a suspicion of guilt. It must be such as to permit the trier of fact to draw a rational conclusion that all reasonable hypotheses other than guilt have been excluded. Whether an alternative hypothesis is reasonable under the circumstances is initially a question for the trial court or jury, but the fact-reviewing function of the appellate court must include an examination of the record for the purpose of determining whether there is a reasonable alternative explanation of the circumstances which a rational trier of fact would have to accept as raising a reasonable doubt of the defendant's guilt.

We need not summarize in detail the testimony of the 22 witnesses who testified during the guilty or innocent phase of the trial. The jury was free to reject appellant's testimony in which he denied the homicide and claimed that he found his wife after she was electrocuted. The jury was not required to believe the conclusion in the death certificate which showed the Justice of the Peace originally came to the conclusion that the death was an accident.

Viewing the evidence according to the tests quoted hereinabove from *Flores* and from *Earvin*, the facts are that Bobby Templin called the hospital on Sunday, April 11, 1976. When the ambulance arrived, the two ambulance attendants found Rhonda Templin's body lying on the floor of the living room. Her naked body was covered with a blanket. After they took her body to the funeral home, they discovered burn marks on her right arm and her right chest wall. While the attendants were at the house, they saw that the bathtub was partially filled with water and that there was a radio in the tub. Bobby Templin told them that his wife had been taking a bath and that the radio had fallen into the tub causing her death. Bobby Templin told them he had taken his wife's body out of the bathtub and carried it into the living room.

■ The most notable items of circumstantial evidence were the electrical burns on the body. Photographs of the body show the electrical burns to the inside of the right arm and adjacent side of the chest. The burns are consistent with the State's theory that appellant put a "live bare-wire electric cord" to his wife's chest and that her arm contracted against it. The wire had to be between her arm and body to make these more or less mirror image burns. Appellant admitted that he had spliced an extension cord and that the splice had not been taped.

The forensic pathologist testified at length as to his experience on autopsies of

3. Paragraph 4 of the Charge states: "You are instructed that in this case the state relies on circumstantial evidence for a conviction.

"In order to warrant a conviction of a crime on circumstantial evidence, each fact necessary to the conclusion sought to be established must be proved by competent evidence, beyond a reasonable doubt; all the facts (that is, the facts necessary to the conclusion) must be consistent with each other and, taken together, must be of a conclusive nature, leading on the whole to a satisfactory conclusion and producing, in effect, a reasonable and moral certainty that the accused, and no other person, committed the offense charged.

"But in such cases it is not sufficient that the circumstances coincide with, account for, and therefore render probable the guilt of the defendant. They must exclude, to a moral certainty, every other reasonable hypothesis except the defendant's guilt; and unless they do so, beyond a reasonable doubt, you will find the defendant not guilty."

electrocution victims. The remainder of this paragraph is a summary of his findings and conclusions. Electrical current can cause the victim to become "locked onto the wire." The muscles contract and can prevent breathing. The heart can become overstimulated and begin to flutter, resulting in death. An electric cord similar to the electric cord (discussed in more detail under the second ground of error) could have made the burn marks which were found on Rhonda's body if it were plugged into the 110 volt electrical circuit at appellant's home. Those burn marks appear to be the entrance wounds. The current would cause the arm to clamp down on the wire and hold it there. The muscles would freeze until the current is switched off or until they fatigue to the extent they are not capable of doing anything. The victim would probably not be able to resist or defend herself if she were partially submerged in water. The water in the bathtub would give the body a large area of surface for the electricity to pass out, and this would explain the absence of any exit wounds. Some of the flesh could char and flake off the body. This would explain the charred flakes which were found in the bath water by the neighbor who took the radio out of the bathtub. The electrocution of a person in the bathtub would not affect the circuit breaker. In answer to a lengthy hypothetical question, the forensic pathologist expressed his expert opinion that the electrocution should be regarded as a homicide until proved otherwise. On cross-examination he agreed that it would be "possible" for the lady to have died as a result of accident or suicide or by some other party coming into the house and committing the homicide.

There is no evidence of any third party coming into the house and electrocuting Rhonda Templin, and we hold that the jury was free to conclude that this was not a "reasonable hypothesis."

There is no indication of suicide. Even though appellant was having an extramarital affair, he said that his wife did not know about the affair. Even if she did, the evidence shows that she had known of two prior extramarital affairs and had not attempted suicide. It seems unlikely that she would choose this method of committing suicide. Appellant's lawyer conceded in closing jury argument he did not think she committed suicide. Under all of the evidence we hold that the jury could believe to a moral certainty that suicide was not a "reasonable hypothesis."

Concerning appellant's defense of accidental electrocution, the facts do not support that hypothesis. The evidence reflects that if the radio cord were plugged into the extension cord and if the radio were placed on a stool outside the tub, there would be no way for the "bare-wire" on the extension cord to get between her arm and body. The radio would have been between her body and the extension cord. The radio was too large to fit on the side of the bathtub, and there was a raised metal strip which held the glass shower door. Also, if the cord were extended while plugged in, the bare wires would probably have come into contact and tripped the circuit breaker. Even if the radio had fallen into the tub accidentally, it could not have caused the burns on her arm and chest. Therefore, the jury could reasonably believe that the live wire could not have gotten between her arm and chest accidentally. Viewing all of the circumstantial evidence in the light most favorable to the verdict, we hold that the jury could reasonably come to the conclusion that accident was not a reasonable hypothesis and that they could believe to a moral certainty that appellant had killed his wife by putting the "live bare-wire electric cord" to her chest while she sat in the bathtub and that he later put the radio in the bathtub, plugging it into the disconnected extension cord in order to set up the appearance of an accidental electrocution.

Additional evidence supporting the jury's verdict are the inconsistent statements which appellant made following his wife's death. He either contradicted himself or was contradicted by other witnesses on the following: (1) the length of time he was gone from home on the morning Rhonda Templin was electrocuted; (2) whether ap-

pellant bought the radio in Roby a few days before his wife's death; (3) how the extension cord was damaged and spliced without being taped; (4) whether the radio and extension cord were in the bathroom when he left the house on the day his wife was electrocuted; (5) whether he was having an extramarital affair at the time of his wife's death; (6) whether or not there was an insurance policy covering accidental death of his wife; (7) whether or not he had electrocuted cats and dogs when he was a boy; and (8) whether or not he was nervous when he talked with friends a few minutes before his wife's death was reported.

The first ground of error is overruled. We hold there is sufficient circumstantial evidence to justify the jury's finding of guilty.

■ The second ground of error[4] deals with the extension cord which was used at trial to explain how the burn marks circumstantially supported the State's case. The original extension cord had disappeared while in appellant's possession. The objection goes to the weight of the exhibit rather than its admissibility. We hold that it was admissible as a visual aid to help the witnesses explain their testimony. There was ample testimony that the exhibit used at trial was similar to the one which had disappeared. See *Simmons v. State*, 622 S.W.2d 111 at 113 (Tex.Cr.App.1981); *Bingham v. State*, 630 S.W.2d 718 at 720 (Tex.App.—Houston [1st Dist.] 1982, no pet'n). The second ground is overruled.

■ The third ground of error[5] challenges the testimony by two of appellant's cousins that he had told them how he and his older brother had electrocuted cats and dogs. Similar testimony was also given by appellant's uncle during the punishment phase of trial. The State argues that this is relevant to show appellant's specialized knowledge of electricity. Appellant argues that the conversation was too remote to be admissible. It appears that appellant was about 12 years old when the conversation with his cousins took place. He was about 22 years old when his wife was electrocuted. Appellant's cases on remoteness deal with prior convictions used for impeachment. They are not in point. The conversation was not offered for that purpose. The third ground of error is overruled.

■ The fourth ground[6] complains that the court refused to instruct the jury that the death certificate shall be prima facie evidence of the facts stated therein. The only *fact* in the death certificate which was in issue at trial was whether Rhonda Templin's death was an accident as shown by the certificate or a homicide. We hold that the Justice of the Peace's notation of accident was not a "fact" within the meaning of TEX.REV.CIV.STAT.ANN. art. 4477, Rule 54a (Vernon Supp.1982–1983). That notation was a conclusion, and the requested charge was properly denied by the trial court. The death certificate was admitted into evidence without objection, but the conclusion of suicide was not a "fact" which would justify the requested instruction. See *Texas Employers' Insurance Association v. Gregory*, 534 S.W.2d 166 at 168 (Tex.Civ.App.—Houston [14th Dist.] 1976, no writ). The fourth ground of error is overruled.

■ The last ground[7] is overruled. The trial court instructed the State "not to

4. Ground Two claims: "The trial court erred in allowing into evidence an electrical cord manufactured and produced by the District Attorney which was not the cord involved in the death of Rhonda Templin, but was merely an attempted replica thereof."

5. Ground Three contends: "The trial court erred in allowing into evidence testimony by Danny Simpson and Lewis Dale Simpson that the appellant had told them 12 or 15 years earlier that he had electrocuted small dogs and cats when

he was 12 years old as such testimony was not relevant and too remote."

6. Ground Four claims: "The trial court erred in failing to charge the jury as requested by defendant as to the law concerning certified copies of death certificates and further failing to charge the jury as to prima facie evidence with an instruction thereon."

7. Ground Five contends: "The trial court erred in allowing the appellee to continually attempt

knowingly go into hearsay matters." Appellant's brief concedes that all 25 hearsay objections were sustained, and the record shows that when requested, the jury was instructed to disregard those answers. Much of the hearsay was nonresponsive answers to proper questions. The cases cited by appellant on this ground are factually distinguishable because they deal with prosecutorial misconduct. We are unable to say that this record shows prosecutorial misconduct.

The judgment of conviction is affirmed.

---

to offer hearsay evidence which required the appellant to object on so many occasions that the appellant was denied a fair trial because of the misconduct of the prosecutor."