**TEXAS WORKERS' COMPENSATION COMMISSION and Katherine D. Kaus, Appellants,**

v.

**WAUSAU UNDERWRITERS INSURANCE, Appellee.**

No. 01–01–00955–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Sept. 25, 2003.

Rehearing Overruled Dec. 17, 2003.

Bruce Fort, Texas City, John Cornyn, Attorney General of Texas, Greg Allan Halbrook, Office of the Attorney General, Austin, for Appellants.

Victor Lee Harris, Victor L. Harris & Associates, PLLC, Sugar Land, for Appellee.

Panel consists of Justices TAFT, ALCALA, and PRICE.*

* The Honorable Frank C. Price, former Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

## OPINION

TIM TAFT, Justice.

Appellee, Wausau Underwriters Insurance (Wausau), sought judicial review in the district court of Galveston County, Texas of a decision by intervening appellant, the Texas Workers' Compensation Commission (TWCC),[1] awarding appellant, Katherine Kaus (Mrs. Kaus), death benefits for the death of her husband, Thomas Kaus (Mr. Kaus). Wausau sought review of two issues: (1) whether Mr. Kaus's death was the result of a willful attempt to injure himself (suicide) and (2) whether Mr. Kaus's death occurred within the course and scope of his employment. At trial, the parties stipulated that, if the jury determined that Mr. Kaus's death was the result of suicide, his death did not occur within the scope of his employment. The jury determined that Mr. Kaus's death occurred as a result of suicide. Thus, the trial court entered judgment for Wausau and set aside the TWCC's award of death benefits to Mrs. Kaus. In an issue of first impression, we address the admissibility of the opinion of an assistant medical examiner that a death was a suicide, as well as of death certificates and autopsy reports containing that opinion, under the Texas Rules of Evidence. We affirm.

## Background

Mr. Kaus was employed as a security guard for a 21–story building in downtown Houston. On February 12, 1997, Mr. Kaus was reported missing by a fellow security guard. After employees and police searched the building for several hours, Mr. Kaus's body was found on a fifth-floor awning. The Houston Police Department conducted a homicide investigation. Police officers questioned employees of the building. There were no witnesses who had seen Mr. Kaus fall to his death. Police were unable to determine from what location Mr. Kaus had fallen. Because of the weather conditions—cold, rain, wind, and lightning—the police did not make a video recording of the roof of the building. The only evidence to support a further homicide investigation was Mr. Kaus's missing wallet and watch and a "brush burn" on the back of Mr. Kaus's head.

The personal investigation of assistant medical examiner Dr. Parungao was limited to the autopsy of Mr. Kaus's body. The autopsy revealed the cause of death as a "crushed chest, abdomen, and pelvis." Based solely on police and investigator reports, Dr. Parungao determined that Mr. Kaus had committed suicide. The reports that Dr. Parungao reviewed included interviews with Mrs. Kaus and with co-workers of Mr. Kaus. In Mrs. Kaus's interview, she admitted that Mr. Kaus had been depressed for years and had threatened suicide on several occasions, including sometime about a year before his death. Mr. Kaus's co-workers spoke of Mr. Kaus's unhappiness with his marital relationship and of how his unhappiness was aggravated by an extended visit by his mother-in-law, which explained why he had tried to work as many weekends as possible in order to be out of the house. They also spoke of Mr. Kaus's recent deterioration in appearance and dejection from having lost a lawsuit. They also mentioned that Mr. Kaus was concerned with his financial situation. Based on the investigation's reports, Dr. Parungao entered on Mr. Kaus's death certificate and on his autopsy report that the manner of death was "suicide" committed when Mr. Kaus "jumped from height."

---

**1.** TWCC appears as an intervenor and appellant pursuant to Texas Labor Code section 410.254. Tex. Lab.Code Ann. § 410.254 (Vernon Supp.2003).

Mrs. Kaus applied for workers' compensation death benefits. Wausau denied the claim on the ground that Mr. Kaus's death was the result of suicide. Under the insurance policy, death by suicide does not occur within the course and scope of employment. To determine whether Mrs. Kaus was entitled to workers' compensation death benefits, TWCC held an administrative contested-case hearing. TWCC found that Mr. Kaus's death was not the result of a willful attempt to injure himself and thus that his death had occurred within the course and scope of his employment. Subsequently, Wausau filed an administrative appeal with TWCC. The TWCC Appeals Panel affirmed the findings from the contested-case hearing. Wausau then challenged that decision by filing a petition for judicial review.

Before trial, Mrs. Kaus and TWCC had requested and received a ruling from the court that excluded all opinions stating the ultimate conclusion that Mr. Kaus had committed suicide. The court further determined that Dr. Parungao was not qualified as an expert on suicide. Therefore, the court required the death certificate and autopsy report, which were prepared by Dr. Parungao, to be redacted to omit the manner of death as "suicide" caused when Mr. Kaus "jumped from height."

During Wausau's presentation of the case, Wausau sought to present the deposition testimony of Dr. Conway.[2] Mrs. Kaus and TWCC objected to the inclusion of portions of the deposition involving Dr. Conway's opinions on whether Mr. Kaus committed suicide and on the assistant medical examiner's findings. The court decided to allow some of the testimony, while excluding the rest.[3] In reading from

Dr. Conway's testimony, Wausau included the following:

> Wausau: In your recollection, is there anything in that report that—that *you thought was inconsistent with suicide,* or was it just the whole thing?
>
> Dr. Conway: I—I don't—I can't remember what the report says, so I can't—I can't answer that very well right now.
>
> Wausau: Okay. Well, if—but *you are rendering an opinion here today that it's highly unlikely that he committed suicide.* And you base that upon that report you read; is that correct?
>
> Dr. Conway: No. I based it on knowing him and—and what—I'm sticking to what I said before and—when I had a better recollection of everything going on.

(Emphasis added.)

Wausau continued to ask Dr. Conway about information contained in the assistant medical examiner's report and that information's consistency with suicide. After several questions and answers, the deposition continued with this:

> Wausau: Okay. If someone were to step off the roof of that building and land on the fifth floor awning, as Mr. Kaus did, what additional observations would you expect that would support a finding of suicide?
>
> Dr. Conway: I have no opinion.
>
> Wausau: No opinion whatsoever?
>
> Dr. Conway: None.
>
> Wausau: So *your opinion as to it's highly unlikely,* you're withdrawing it at this time?
>
> Dr. Conway: No. I have no opinion about the forensic activity. I

---

2. Dr. Conway was Mr. Kaus's regular physician.

3. The record is unclear as to the exact testimony excluded because Dr. Conway's deposition was not included in the exhibits for the record.

couldn't—I have—I don't know whether people tumble or—I have no—

Wausau: Okay.

Dr. Conway:—I have no forensic opinion.

Wausau: Okay. And I'm—I'm—I want to make sure we're on the same page. So your opinion is based upon your relationship with Mr. Kaus over the period of years?

Dr. Conway: Yes.

Wausau: And it has nothing whatsoever to do with the Medical Examiner's report or the police officer's report?

Dr. Conway: No.

Wausau: Okay. And you consider that information to not be relevant to *your opinion on whether or not he committed suicide?*

Dr. Conway: The—the—I'm relying on my previous testimony. Because I do not recall having seen a document that Mrs. Kaus brought to me, and *that document did not have anything in it that convinced me that—that he had commit—committed suicide.*

(Emphasis added.)

After Wausau concluded its presentation of Dr. Conway's testimony, Mrs. Kaus and TWCC presented excerpts of Dr. Conway's testimony. Mrs. Kaus and TWCC announced the page and line numbers to be read and offered the following:

Mrs. Kaus/TWCC: Do you have an opinion based upon reasonable medical probability, as Mrs.—Mr. Kaus's physician and after having treated him for 20–some-odd years and certainly hands-on treatment for last 6 to 12 months of his life, as to whether or not he committed suicide on February 12, 1997?

Dr. Conway: I think that's highly unlikely.[4]

Wausau raised no objections before or during this proffer. However, at the next break, the trial court stated sua sponte that Mrs. Kaus and TWCC "had opened the door" by reading Dr. Conway's opinion on whether Mr. Kaus had committed suicide. Mrs. Kaus and TWCC objected, stating that their inclusion of Dr. Conway's opinion was in response to Wausau's inclusion of his opinion. Wausau denied including Dr. Conway's opinion. To sanction Mrs. Kaus and TWCC for having opened the door, the court stated that it would allow Dr. Parungao's opinion testimony. The court also admitted into evidence the death certificate showing "suicide," but not "jumped from height," and the autopsy report concluding that Mr. Kaus's death was a suicide. The jury subsequently found that Mr. Kaus had committed suicide, and the trial court set aside the TWCC's decision.

**Issues for Review**

In two issues presented for review, Mrs. Kaus and TWCC contend that the trial court committed harmful and reversible error in (1) admitting Dr. Parungao's opinion testimony on the issue of suicide and (2) admitting the death certificate and autopsy report concluding that suicide was the manner of death.

Wausau, in support of the trial court's decision, contends that the trial court properly admitted the death certificate and Dr. Parungao's opinion testimony, both pursuant to case law and as a remedy for violating the court's order by "opening the door."

---

4. Mrs. Kaus and TWCC had initially objected to the page from which they read, but the court had overruled these objections.

## A. Standard of Review

The decision to admit or to exclude evidence is left to the discretion of the trial court and is reviewed for an abuse of discretion. *Moore v. Bank Midwest, N.A.,* 39 S.W.3d 395, 401–02 (Tex.App.Houston [1st Dist.] 2001, pet. denied). To obtain reversal of a judgment based on an error in the admission or exclusion of evidence, an appellant must show that the trial court's ruling was error and that the error probably resulted in the rendition of an improper judgment. *Id.*

## B. Whether the Trial Court Erred in Concluding that Mrs. Kaus and TWCC Had Opened the Door

As a preliminary matter, the trial court had stated that neither party could offer evidence of anyone's opinion regarding suicide. When the parties approached the bench before Dr. Conway's deposition testimony was read by Wausau, objections were properly made by Mrs. Kaus and TWCC. The trial court overruled the objections as to certain pages and lines of the deposition. Wausau then read from the allowable part of the deposition. This testimony included Dr. Conway's opinion that Mr. Kaus had not committed suicide. On cross-examination, Mrs. Kaus and TWCC informed the court and Wausau what pages and lines they would read. Wausau did not object. Because the court had overruled Mrs. Kaus and TWCC's objections to the inclusion of the specific lines that were read, both parties were allowed to include this testimony. Therefore, based on these facts, the trial court erred by determining sua sponte that Mrs. Kaus and TWCC had "opened the door." The trial court had broad discretion on whether to admit or to exclude evidence,[5] but its decision to sanction Mrs. Kaus and TWCC by including previously excluded evidence was based on a mistaken belief as to which party had opened the door.

Because the trial court erred in sanctioning Mrs. Kaus and TWCC for having opened the door, this Court must now determine whether this error, which led to the admission of Dr. Parungao's opinion testimony and the death certificate and autopsy report, constitutes reversible error. A finding that the trial court committed reversible error requires this Court to conclude that admitting the death certificate, the autopsy report, and Dr. Parungao's testimony "probably caused the rendition of an improper judgment." Tex. R.App. P. 44.1.

## C. Harm

### 1. Whether the trial court's error in admitting Dr. Parungao's expert opinion as a sanction was rendered harmless because his opinion was admissible for another reason

Mrs. Kaus and TWCC's issue two challenges the admissibility of Dr. Parungao's testimony that, in his opinion, Mr. Kaus had committed suicide. In forming this opinion, Dr. Parungao acknowledged that he had relied upon the investigation reports made by police officers and an investigator from the Medical Examiner's Office. Dr. Parungao further stated that he had performed the autopsy, which revealed only the cause, but not the manner, of death.

Mrs. Kaus and TWCC objected that Dr. Parungao's opinion regarding suicide was based on hearsay and was thus inadmissible. Although the investigation reports are hearsay, Rule of Evidence 703 allows expert opinion testimony that relies on facts or data collected or reported by another when those facts or data are the

---

5. *See E.I. du Pont de Nemours & Co. v. Robinson,* 923 S.W.2d 549, 558 (Tex.1995).

type "reasonably relied upon by experts in the particular field in forming opinions." TEX.R. EVID. 703.[6] This type of expert opinion testimony is allowed even if the underlying facts or data are themselves inadmissible. *Id.* Even though the police and investigator reports contained hearsay, Dr. Parungao testified that information gathered in such investigations is of the type customarily relied upon in forming opinions as to the manner of death. Therefore, Dr. Parungao's expert opinion that Mr. Kaus's manner of death was "suicide" caused when Mr. Kaus "jumped from height" was admissible under Rule 703 absent an objection that its probative value was outweighed by the risk of prejudicial harm. *See Sosa v. Koshy,* 961 S.W.2d 420, 427 (Tex.App.-Houston [1st Dist.] 1997, pet. denied). Neither Mrs. Kaus nor TWCC made a prejudicial-harm objection at trial to the admission of Dr. Parungao's opinion in the death certificate or through his testimony. *See* TEX.R. EVID. 705(d) (providing for a balancing test to determine whether the danger that the underlying facts might be used for a purpose other than as an explanation or support for the expert's opinion outweighs their value as an explanation or support, or are otherwise unfairly prejudicial). Even if a prejudicial-harm objection had been made, both Dr. Parungao and the investigating officers testified at trial. Mrs. Kaus and TWCC were able to conduct cross-examination. Cross-examination could minimize any prejudicial effect. Furthermore, opinion testimony involving the ultimate issue to be decided by the jury is admissible and is not considered prejudicial on that basis. *See* TEX.R. EVID. 704.

Mrs. Kaus and TWCC further objected that, because the trial court had initially sustained their *Daubert*[7] challenge to Dr. Parungao's credentials, the trial court erred in later admitting Dr. Parungao's opinion testimony as a sanction. The basis for the trial court's initial ruling that Dr. Parungao's opinions regarding suicide and falling from height were not admissible was that the opinions were not scientific. By that, the trial court meant that only part of Dr. Parungao's opinion was based on science, *i.e.,* his determination of cause of death (crushed chest, abdomen, and pelvis), from his forensic examination of the body. However, part of Dr. Parungao's opinion was also based on investigations conducted by others, *i.e.,* his determination of manner of death (suicide, jump from height). It was the latter, "non-scientific" opinion testimony that the trial court had initially redacted from both the death certificate and autopsy report and had excluded from Dr. Parungao's testimony.

■ The trial court erred in initially concluding that Dr. Parungao was not qualified to render an expert opinion regarding manner of death, in addition to cause of death. Rule 702 states:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise.

---

6. Rule 703 states:
The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by, reviewed by, or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.
TEX.R. EVID. 703.

7. *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

TEX.R. EVID. 702. In *Gates v. State,* relied upon by Wausau, this Court found that a police officer who had seen several suicide victims, both in his experience as a police officer for 11 years and when he had worked in a funeral home in high school, was qualified by experience to give an expert opinion on whether the victim had committed suicide. *See id.,* 24 S.W.3d 439, 443–44 (Tex.App.-Houston [1st Dist.] 2000, pet. ref'd). Dr. Parungao had vastly more experience with suicide victims than did the police officer in *Gates.* Dr. Parungao's curriculum vitae was in evidence to show that he had over 19 years of experience as an assistant medical examiner, and his testimony showed he had much experience with deaths resulting from falls from heights. In addition, Dr. Parungao testified that his job entailed performing autopsies and reviewing investigation reports to determine cause *and manner* of death. This experience was more than enough to qualify Dr. Parungao to give an expert opinion on the manner of death, including suicide by jumping from height. Appellant's challenge to Dr. Parungao's opinions regarding "suicide" and "jump from height" were not based on any failure of Dr. Parungao to follow the usual protocol in making his decisions, but on his alleged incompetency to state any opinion because it was based on the investigations of others.

Mrs. Kaus and TWCC rely on *Gray v. Bird* and this Court's opinion in *Smith v. Tennessee Life Insurance Co.* to support their contention that a medical examiner's opinion on suicide is inadmissible when it relies upon reports of investigators. *Gray,* 380 S.W.2d 908 (Tex.Civ.App.-Tyler 1964, writ ref'd n.r.e.); *Smith,* 618 S.W.2d 829 (Tex.Civ.App.-Houston [1st Dist.] 1981, no writ). Both cases, however, were decided before the Texas Rules of Evidence were codified in 1983. Importantly, In *Smith,* the rationale for holding that it was error to admit the medical examiner's opinion that the manner of death was suicide was that the report of a private investigator was not the type of hearsay data upon which a doctor could rely in forming his expert opinion. *Id.,* 618 S.W.2d at 832. The longtime status of the law had been that an expert opinion could not be based solely on statements or reports of third parties, unless those statements were properly in evidence and the opinion was sought through hypothetical questions. *Id.* at 831 (quoting *Moore v. Grantham,* 599 S.W.2d 287, 289 (Tex.1980)). Now, in contrast, rule 705(a) provides that the expert may testify to the underlying facts or data upon which his opinion is based. TEX.R. EVID. 705(a).

The Texas Rules of Evidence were based on the Federal Rules of Evidence, which "favor the admissibility of relevant evidence, leaving it to the parties to argue the weight that should be given to the evidence." *Brooks v. Chrysler Corp.,* 786 F.2d 1191, 1198 (D.C.Cir.1986). In light of the changes made upon adoption of the Texas Rules of Evidence, including rules 702 through 705, which favor admissibility, particularly of matters typically relied upon in forming the opinion and regardless of whether those matters are themselves otherwise admissible, neither *Gray* nor *Smith* supports appellant's contention.

 Although the trial court initially had determined that Dr. Parungao was not qualified as an expert on suicide, the court would not have abused its discretion if it had later decided to admit Dr. Parungao's expert opinion. *See Keo v. Vu,* 76 S.W.3d 725, 730 (Tex.App.Houston [1st Dist.] 2002, pet. denied) (stating that trial court has broad discretion to determine the admissibility of expert testimony). A trial court does not err if it makes the correct ruling for the wrong reason. *See Hawthorne v.*

*Guenther*, 917 S.W.2d 924, 931 (Tex.App.-Beaumont 1996, writ denied) (stating that "[a] trial court cannot abuse its discretion if it reaches the right result, even for the wrong reason."). Therefore, the trial court's error in admitting Dr. Parungao's opinion testimony as a sanction was harmless. *See* TEX.R.APP. P. 44.1.

Accordingly, we overrule Mrs. Kaus and TWCC's issue two.

**2. Whether the trial court's error in admitting the unredacted death certificate as a sanction was rendered harmless because the certificate's contents were admissible for another reason**

Mrs. Kaus and TWCC's issue one first challenges the admissibility of Dr. Parungao's opinion in the death certificate.

**a. Admissibility of the death certificate as prima facie evidence of the facts stated therein**

Mrs. Kaus and TWCC objected to the admission of Mr. Kaus's death certificate on the basis of section 191.052 of the Texas Health and Safety Code. *See* TEX. HEALTH & SAFETY CODE ANN. § 191.052 (Vernon 2001). The death certificate was certified by the local registrar and stated that the manner of Mr. Kaus's death was "suicide" when he "jumped from height."

Texas law provides that a copy of a death certificate "certified by the state registrar is prima facie evidence of the facts stated in the record." *Id.* This statute does not appear to have been addressed by any Texas courts, but its predecessor, Article 4477, Rule 54a of the Revised Civil Statutes, has been addressed. Former rule 54a was enacted in 1927 and repealed and replaced by section 191.052 in 1989. *See* Act of May 18, 1989, 71st Leg., R.S., ch. 678, § 1, 1989 Tex. Gen. Laws 2230, 2401. Former rule 54a provided that a copy of a death certificate, "when properly certified by the State Registrar, shall be prima facie evidence in all courts and places of the facts therein stated." *Id.*

Most courts interpreting former rule 574a held that, unless the death certificate was certified by the state registrar as provided by the statute, the death certificate was either totally inadmissible or at least inadmissible as prima facie evidence.[8]

---

8. *See Hedtke v. Transport. Ins. Co.*, 383 S.W.2d 474, 475 (Tex.Civ.App.San Antonio 1964, writ. ref'd n.r.e.) (holding that trial court properly excluded death certificate certified by local registrar because statute required certification by state registrar); *Tex. Reserve Life Ins. Co. v. Dees*, 368 S.W.2d 886, 888 (Tex.Civ.App.-San Antonio, 1963, writ ref'd n.r.e.) (finding death certificate prepared by justice of peace and not signed by state registrar was inadmissible to prove cause of death); *Armstrong v. Employers Cas. Co.*, 357 S.W.2d 168, 170 (Tex.Civ.App.-Waco 1962, no writ) (holding that former rule 54a applied only to copies of death certificates certified by the State Registrar and not those certified by local registrars); *Tichenor v. Little*, 279 S.W.2d 379, 380 (Tex.Civ.App.-Galveston 1955, writ ref'd n.r.e.) (stating that death certificate without medical certification by attending physician was not in full compliance with article 4477 and thus inadmissible); *Universal Life & Acc. Ins. Co. v. Ledezma*, 61 S.W.2d 165, 166 (Tex.Civ.App.-Beaumont 1933, writ dism'd) (holding that death certificate certified by city or local registrar was properly excluded because "the power to make certified copies of the records of births and deaths receivable evidence 'in all courts' is conferred upon the State Registrar."); *see also Continental Cas. Co. v. Fountain*, 257 S.W.2d 338, 343 (Tex.Civ.App.-Dallas 1953, writ ref'd) (finding death certificate was certified by state registrar and was therefore prima facie evidence that decedent died of cancer); *Reserve Life Ins. Co. v. Shacklett's Estate*, 412 S.W.2d 920, 922 (Tex.Civ.App.-Tyler 1967, writ ref'd n.r.e.) (noting affirmatively that death certificate fully complied with art. 4477 and was certified by state registrar, making it was admissible). *Contra Campbell v. State*, 632 S.W.2d 165 (Tex.App.-Waco 1982, no writ) (admitting death certificate certified by local registrar as prima facie evi-

When the Texas Legislature repealed article 4477 and replaced it with section 191.052 of the Texas Health and Safety Code, the Legislature changed nothing substantively. Section 191.052 was merely a plain-language version of former rule 54a. Section 191.052 states, "A copy of a birth, death, or fetal record registered under this title that is certified by the *state registrar* is prima facie evidence of the facts stated in the record." TEX. HEALTH & SAFETY CODE ANN. § 191.052 (emphasis added). Had the Texas Legislature wanted to include local registrars and justices of the peace in the statute, it had that opportunity in 1989 when it repealed former rule 54a and replaced it with section 191.052. In light of most courts' finding that admissibility of a death certificate requires strict compliance with the statute, namely certification by the state registrar, and the Texas Legislature's keeping virtually the same language when replacing former rule 54a with section 191.052, this Court holds that, in order for a death certificate to be admissible as prima facie evidence of the facts stated therein, it must be certified by the state registrar. Certification by a local registrar does not satisfy the plain language of the statute. Therefore, Mr. Kaus's death certificate was not admissible as prima facie evidence of the facts stated therein under section 191.052.[9]

dence of the facts stated in record because source of information was reliable).

**9.** Even if Mr. Kaus's death certificate were admissible pursuant to section 191.052 as prima facie evidence of the facts stated therein, the question remains whether "suicide" and "jumped from height" in the death certificate are "facts stated therein" or mere opinions. Courts are split as to whether findings such as "suicide" or "accident" in a death certificate are facts or opinions.

Some courts interpreted former rule 54a to mean that everything included in a death certificate was a fact, but that the those facts were not binding on the jury and were subject to evidence to the contrary. *See Marker v. Prudential Ins. Co. of Am.*, 273 F.2d 258, 264 (5th Cir.1959) (admitting death certificate reciting "accident" as prima facie evidence, but stating that certificate was subject to full explanation and contradiction); *Shacklett's Estate*, 412 S.W.2d at 920, 922 (finding that "accident" in death certificate was fact); *Standard Ins. Co. v. Thomas*, 383 S.W.2d 447, 452 (Tex. Civ.App.-Tyler 1964, no writ) (stating death certificate could not be considered as conclusive evidence, but was of some probative force); *Aetna Life Ins. Co. v. McLaughlin*, 370 S.W.2d 229, 236 (Tex.Civ.App.-Houston [1st Dist.] 1963) (stating that death certificate that recited suicide as manner of death created prima facie case of suicide, which beneficiary could refute), *rev'd on other grounds*, 380 S.W.2d 101 (Tex.1964);

*Southland Life Ins. Co. v. Brown,* 121 S.W.2d 653, 654 (Tex.Civ.App.-Waco 1938, no writ) (stating that jury did not have to accept recitations in death certificate as conclusive proof that insured had committed suicide).

Courts that held that a finding of "suicide" or "accident" in a death certificate was an opinion excluded the death certificate from evidence or at least redacted it. *See Serv. Mut. Ins. Co. of Tex. v. Banke,* 155 S.W.2d 668, 669 (Tex.Civ.App.San Antonio 1941, writ ref'd) (stating that conclusion of "accident" in death certificate was inadmissable); *Templin v. State,* 677 S.W.2d 541, 545 (Tex.App.-Eastland 1983) (stating that justice of peace's notation of "accident" in death certificate was not fact), *rev'd on other grounds,* 711 S.W.2d 30 (Tex.Crim.App. 1986); *Tex. Employers' Ins. Ass'n v. Gregory,* 534 S.W.2d 166, 168 (Tex.App.-Houston [14th Dist.] 1976), no writ (stating that "suicide" was not fact as contemplated by former rule 54a); *Armstrong v. Employers Cas. Co.,* 357 S.W.2d 168, 172 (Tex.Civ.App.-Waco 1962, no writ) (stating that coroner's conclusion of suicide in death certificate was inadmissable to prove manner of death); *Langlitz v. Am. Nat'l Ins. Co.,* 146 S.W.2d 484, 487 (Tex.Civ.App.Eastland 1940, writ dism'd) (stating that finding of suicide in death certificate was conclusion of coroner and inadmissable hearsay); *Washington Nat'l Ins. Co. v. Chavez,* 106 S.W.2d 751, 752 (Tex.Civ.App.El Paso 1937, writ dism'd) (holding that trial court prop-

### b. Admissibility of the death certificate as a record of vital statistics

Mrs. Kaus and TWCC also objected to the death certificate on the ground that it constituted or that it contained hearsay. Rule 803(9) of the Texas Rules of Evidence provides an exception to the hearsay-exclusion rule for records of vital statistics: "Records or data compilations, in any form, of births, fetal deaths, deaths, or marriages, if the report thereof was made to a public office pursuant to requirements of law." TEX.R. EVID. 803(9). Mr. Kaus's death certificate was recorded by the City of Houston's Bureau of Vital Statistics pursuant to the Texas Health and Safety Code. *See* TEX. HEALTH & SAFETY CODE ANN. § 191.022(b) (Vernon 2001). Therefore, the death certificate appears to have been admissible under the plain language of Rule 803(9).

No reported Texas case has addressed the admissibility of a death certificate, or of any other record of vital statistics, pursuant to rule 803(9). There is one unpublished opinion in which the court found that a death certificate was not only admissible pursuant to rule 803(9), but that its contents were also admissible, despite an additional hearsay objection to information contained within the certificate. *See Martinez v. State*, 1996 WL 179370 at *1 (Tex. App.-Dallas Apr.16, 1996, no pet.) (not designated for publication). In *Martinez*, the hearsay information was the true name of the deceased supplied by a family member, so that the death certificate contained both the assumed name, under which the body had been delivered to the Dallas Medical Examiner's Office, and the true name, which was the name alleged in the indictment. *See id.*

erly excluded death certificate, which stated "suicide").

We agree with the holding of *Martinez* regarding the admissibility of the death certificate itself pursuant to rule 803(9). This rule provides an alternative avenue of admissibility for death certificates, in addition to section 191.052 of the Texas Health and Safety Code. Of course, rule 803(9) does not provide that evidence admitted pursuant to its hearsay exception is admissible as *prima facie evidence of the facts stated therein*, as does section 191.052.

We are not persuaded by *Martinez*, however, that the contents of the death certificate are automatically admissible pursuant to rule 803(9). Even though a document is admissible pursuant to a hearsay exception, further objections to hearsay contained within the document must be examined separately. *See* TEX.R. EVID. 805 ("Hearsay included within hearsay is not excluded under the hearsay rule if each part of the combined statements conforms with an exception to the hearsay rule provided by these rules."); *Gen. Motors Corp. v. Harper*, 61 S.W.3d 118, 125–26 (Tex.App.-Eastland 2001, pet. filed) (stating that, although patents themselves were admissible under public-records exception to hearsay-exclusion rule, statements within patents constituted inadmissible hearsay). Accordingly, we address the separate issue of the admissibility of Dr. Parungao's opinion, based on hearsay, within the death certificate.

The objected-to statements within the death certificate were Dr. Parungao's opinions on the manner of death. As we have already held, Dr. Parungao's expert opinion regarding manner of death, even though based on hearsay information provided by investigators, is admissible pursuant to rule 705(a). Because Dr. Parun-

Because the death certificate was not admissible pursuant to section 191.052, we need not weigh in on this issue.

gao's opinion was admissible, and because the death certificate was admissible under rule 803(9), the trial court would not have erred if it had admitted the unredacted death certificate containing Dr. Parungao's opinion that Mr. Kaus had committed suicide. Therefore, the error in admitting the unredacted death certificate as a sanction was harmless. *See* Tex.R.App. P. 44.1; *see also Hawthorne*, 917 S.W.2d at 931 ("A trial court cannot abuse its discretion if it reaches the right result, even for the wrong reason.")

We overrule that portion of Mrs. Kaus and TWCC's issue one challenging the admissibility of Dr. Parungao's opinion, within the death certificate, that Mr. Kaus committed suicide.

**3. Whether the trial court's error in admitting the unredacted autopsy report as a sanction was harmless because the report's contents were admissible for another reason**

Under issue one, Mrs. Kaus and TWCC combine their argument that the autopsy report contained inadmissible hearsay with their argument that the death certificate contained inadmissible hearsay. Although there is no separate briefing explaining why the autopsy report is inadmissible, we will address the admissibility of the autopsy report, and of Dr. Parungao's opinion regarding suicide recited therein, because of the similarity of those arguments with the death-certificate argument in issue one.

■ An autopsy report is admissible under the public-records hearsay exception of the Texas Rules of Evidence. *See* Tex.R. Evid. 803(8)(C); *Garcia v. State*, 868 S.W.2d 337, 339–40 (Tex.Crim.App. 1993). Dr. Parungao, as an assistant medical examiner, made the autopsy report "pursuant to authority granted by law," as required to fit the exception. *See* Tex.R. Evid. 803(8)(C). Therefore, under rule 803(8)(C), the autopsy report itself was admissible.

Mrs. Kaus and TWCC objected to the admissibility of the autopsy report because it contained Dr. Parungao's opinion that Mr. Kaus had committed suicide. We have already held that Dr. Parungao's expert opinion that suicide was the manner of death was admissible. Thus, the autopsy report's recitation of Dr. Parungao's opinion was also admissible. Consequently, the trial court would not have erred if it had admitted the unredacted autopsy report for this reason. Therefore, the error in admitting the unredacted autopsy report as a sanction was harmless. *See* Tex. R.App. P. 44.1; *see also Hawthorne*, 917 S.W.2d at 931.

We overrule that portion of Mrs. Kaus and TWCC's issue one challenging the admissibility of Dr. Parungao's opinion, within the autopsy report, that Mr. Kaus had committed suicide.

### Conclusion

We affirm the judgment of the trial court.

Justice PRICE, dissenting.

En banc consideration was requested.

A majority of the Court did not vote in favor of en banc consideration of this case.

Justice Jennings, joined by Justice Hedges, dissenting from the denial of en banc consideration.

FRANK C. PRICE, Justice (Assigned), dissenting.

The majority, in its effort to affirm the trial court's judgment, has taken a situation where there absolutely is no evidence of suicide and created some by declaring the medical examiner clairvoyant. Dr. Vladimir Parungao, a forensic pathologist

and member of the Harris County Medical Examiner's staff, with no education, training, or experience in psychiatry, psychology, or any other mental health related discipline, was elevated, by the majority, to the status of psychic so that he could testify what was in the mind of the decedent at the time he met his death. Not only was he permitted, over objection, to testify that the decedent voluntarily jumped to his death, but his notation, "suicide—jumped from height," typed onto the death certificate likewise was admitted before the jury.

Prior to trial, the trial court, realizing a suicide opinion requires specialized knowledge, conducted a hearing pursuant to the requirements set out in the *Daubert* and *Robinson* line of cases to determine the admissibility of Parungao's expert opinion about the manner of death. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993); *E.I. du Pont deNemours and Co., Inc. v. Robinson*, 923 S.W.2d 549 (Tex. 1995). When the subject of an expert's testimony must be based on scientific knowledge, the trial court is required to make inquiry as to whether the testimony's underlying reasoning or methodology is scientifically valid and properly can be applied to the facts at issue. TEX.R. EVID. 104(a); *Daubert*, 509 U.S. at 580, 113 S.Ct. 2786. The trial court ruled that, because Parungao had no training, education or experience in the mental health field, he had no knowledge that was grounded in the methods and procedures of science. Therefore, any expert opinion, regarding suicide, would be nothing more than unsupported speculation, thus, inadmissible.

Subsequently, the trial court allowed the testimony, not because it changed its decision as to the testimony's admissibility, but as punishment for a perceived violation of the court's order prohibiting all such testimony. TWCC and Kaus were accused of offering restricted testimony through Dr. Conway that was first offered by Wausau; thus, TWCC and Kaus erroneously suffered the sanction. Clearly, as the majority points out, the trial court erred by allowing Parungao's opinion of suicide as a sanction against TWCC and Kaus when Wausau was the real culprit.

From this point, the majority takes a simple case and makes it very complex by explaining why Parungao's testimony was admissible, regardless of the trial court's initial decision to exclude it. After the *Daubert* hearing, the trial court, based on Parungao's lack of qualifications, disallowed his opinion as to suicide. This ruling was subject to review from an abuse of discretion standpoint, but it has never been challenged by either party; therefore, it must stand. *See Robinson*, 923 S.W.2d at 558.

The issue before this Court is whether the trial court erred by admitting the prohibited evidence, over objection, as a sanction against TWCC and Kaus, thereby causing the rendition of an improper verdict. Obviously, it was error to admit the evidence. The character of inadmissible evidence does not change merely because the trial court allowed it into evidence as punishment for violating a court order. This was an inappropriate sanction that allowed the jury to consider inadmissible evidence.

Likewise, it caused the rendition of an improper verdict. Expert witnesses have an extremely prejudicial impact on a jury, in part because the jury perceives them as an unbridled authority figure, entitling them to more credibility than others. Additionally, in the present case, as will be discussed below, outside of Parungao's testimony, there is no evidence to establish suicide.

Because of the lack of evidence to establish suicide, to affirm, the majority must hold that Parungao's opinion of suicide was proper to be placed before the jury, not as a sanction, but as admissible testimony. In order to accomplish this, the majority must, sua sponte, hold that the trial court abused its discretion when it held Parungao's suicide opinion was not admissible. In light of the majority's opinion, I will examine the evidence and the rationale used to affirm the trial court's judgment.

The record reflects, and Parungao admitted, that nothing during his autopsy to determine cause of death indicated the manner of death as suicide. Parungao stated his conclusion of suicide was based on investigative reports generated by law enforcement officers and his office staff.

The investigating officers testified, consistent with their reports, that the scene survey revealed there was no evidence to indicate homicide, suicide, or accident. If any such evidence ever existed, it would have been washed away by the heavy rains that drenched the area before the body was discovered. Because of lack of evidence, the officers also were unsure of where on the building the decedent might have gone over the side, if in fact, he did. In fact, one officer testified his conclusion of suicide was based on Parungao's opinion which was subsequently typed onto the death certificate. I wonder whose report and opinion influenced whom?

In an effort to support a suicide conclusion, Wausau offered testimony from fellow employees and the decedent's widow. One co-worker testified that the decedent had lost his interest in a class-action law suit and was concerned about his financial situation. Other testimony revealed that the decedent preferred working on weekends because his relationship with his wife was not the happiest. This was a preference that he had followed for several years. Nothing about either one of these situations should suggest suicidal tendencies. Very few people have not experienced similar emotions.

According to one witness, the decedent's wife told him that the decedent had been depressed for years and threatened suicide on previous occasions, the last time was over a year before his death. The decedent's wife denied these comments were made. Nonetheless, nothing about these comments, if made, should suggest present day tendencies. In fact, the decedent's actions that day were described as those of a well-adjusted person who entered work well-dressed, well-groomed, happy, in good spirits, joking with fellow employees, and making coffee as usual before going about his daily duties in a normal fashion.

Wausau called Dr. Conway, the decedent's personal physician, to the stand. He testified, pursuant to questions by Wausau, that it was unlikely that the decedent committed suicide. He based this opinion on his long-term relationship, both professional and personal, with the decedent. Dr. Conway's opinion was reaffirmed during cross-examination by TWCC and Kaus. This was the act for which TWCC and Kaus were sanctioned.

In addition to Dr. Conway's testimony disproving suicide, the evidence consistent with a homicide revealed that decedent's watch and billfold were missing and never found. A "brush burn" wound was discovered on the back of decedent's head.

The evidence described above comprises all of the information compiled into the investigative reports. It would be highly speculative for anyone, with or without special training, to conclude that the decedent met his death as a result of homicide, accident, or suicide. Certainly, Parungao has no special powers that entitle him to such a conclusion.

Because Parungao puts so much emphasis on the substantive information in the investigative reports as a basis for his expert opinion of suicide, the trial court must have considered these same reports in arriving at its holding that Parungao was not qualified to render a suicide opinion. If it did not consider the reports, then the trial court's judgment was based solely on Parungao's curriculum vitae and his testimony claiming other qualifications, which are grossly lacking in the mental health area and no kind of investigative report would make up for that deficiency.

Obviously, the majority cares nothing about the quality of the information Parungao considered in arriving at his conclusion, only that he claimed to have read some investigative reports. Other than the evidence discussed above, if there was any other evidence consistent with suicide, Wausau would have offered it, because what was presented would never pass muster on a sufficiency challenge.

To support its conclusion that Parungao's opinion was admissible from its inception, the majority relies on Rules of Evidence 702, 703, 704 and 705, which it points out, were codified in 1983. It claims these rules, regardless of the trial court's ruling, allow Parungao's opinion. What the majority misunderstands is that these rules only define the appropriate limits on the admissibility of purportedly scientific evidence. They are not used to determine who qualifies as an expert to be able to give such opinion testimony. This determination is reserved for the trial court, with the standard of review being abuse of discretion. That is why the *Daubert* and *Robinson* line of cases were decided years after the rules were codified—to assist the courts to more accurately identify qualified experts. The majority, in effect, has overruled this whole line of cases.

For these same reasons stated above, Parungao's opinion "suicide—jumped from height" typed onto the death certificate was not admissible. I have no problem with the majority's analysis of the admissibility of the death certificate, just that Parungao's opinion should have been redacted.

There is no question that the trial court committed reversible error by admitting the opinion testimony and evidence that suicide was the manner of death. With no other evidence available, Parungao's testimony was all the jury had on which to base a verdict. The verdict obviously was improper.

I do not offer this as a vigorous dissent, but only as an exercise in common sense and logic to try to convince the majority of the error in its ways. If this does not work, my next effort will be to seek out Dr. Parungao for a list of the next set of lotto numbers.

TERRY JENNINGS, Justice, dissenting from denial of en banc consideration.

I respectfully dissent from the denial of en banc review of this case. I agree with the reasoning of Justice Price's dissent from the panel opinion.

It is well–settled in Texas that trial courts have the responsibility to ensure that expert testimony is not only relevant, but "reliable." *Gammill v. Jack Williams Chevrolet, Inc.*, 972 S.W.2d 713, 726 (Tex. 1998). Moreover, if an expert relies upon unreliable foundation data, any opinion drawn from that data is likewise unreliable. *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 714 (Tex. 1997). If expert testimony is not reliable, it is not evidence. *Coastal Tankships, U.S.A., Inc. v. Anderson*, 87 S.W.3d 591, 595 (Tex.App.-Houston [1st Dist.] 2002, pet. denied).

It is axiomatic that the proponent of expert testimony has the burden of showing its reliability. Here, the proponent of the expert testimony in question failed to meet that burden, and the trial court's subsequent change of heart, no matter the cause, cannot transform what is "no evidence" into some evidence. Given the extraordinary nature of this case, en banc consideration is required. Tex.R.App.P. 41.2(c).